THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| WILLIAM TODD LEE<br>138 Santolina Drive<br>Peachtree City, GA 20269<br><br>*PLAINTIFF,*<br><br>v.<br><br>THE HONORABLE FRANCIS J. HARVEY<br>Secretary of the Army<br>Department of the Army<br>120 Army Pentagon<br>Washington, DC 20310-1020<br><br>*DEFENDANT.* | Civil Action No. |

## I. COMPLAINT

1. This action seeks the amendment of COL Lee's personnel records under the Privacy Act, 5 U.S.C. § 552a.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over the matter pursuant to 5 U.S.C. § 552a(g)(1). This case presents federal questions pursuant to the Privacy Act, 5 U.S.C. § 552a. Venue lies in this district under 5 U.S.C. § 552a(g)(5).

## III. PARTIES

3. William Todd Lee, Plaintiff, is a civilian employee of the United States Department of the Army, GS-15. He retired from the U.S. Army in the grade of Colonel (0-6). He resides at the address provided in the caption above.

4. Francis J. Harvey, Defendant, is the Secretary of the Army. His principal place of business is the address provided in the caption above.

5. The Department of the Army is an agency within the meaning of 5 U.S.C. § 552a(a)(1). Defendant is the head of the Department of the Army and has ultimate authority for the approval or disapproval of amendment requests under the Privacy Act. He therefore is the proper defendant in this matter.

### IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. On 15 September 2005, COL Lee filed a request for the amendment of agency records with the Chief Attorney and Legal Services Directorate, U.S. Army Resources and Programs Agency, Office of Administrative Assistant to the Secretary of the Army, the Pentagon.

7. By undated letter, the Department of the Army, Headquarters, United States Army Reserve Command, Fort McPherson, Georgia, wrote COL Lee stating, "[w]e have determined that the AR 15-6 investigation referred to in your correspondence is an agency not a privacy record and is therefore not subject to amendment under the provisions of the Privacy Act. …We have returned the action to the North Central Regional Civilian Personnel Operations Center at Rock Island, IL for further action."

8. By letter dated 6 January 2006, Lisa R. Crawford, Projects/FOIA Officer, Civilian Personnel Operations Center, North Central (Rock Island), acknowledged receipt of COL Lee's amendment request. She noted that "[y]our request will be reviewed and an appropriate response will be provided accordingly. For your records, the Privacy Act number assigned to this action is FA-06-0007."

9. By letter dated 14 February 2006, Patricia A. Ofslager, FOIA Officer, Civilian Personnel Operations Center, North Central, informed COL Lee that his amendment request had been denied.

10. By letter dated 13 March 2006, received by the Department of the Army on 14 March 2006, COL Lee appealed the denial of his amendment request to the authority designated by Patricia A. Ofslager: Office of the Deputy Assistant Secretary of the Army (Civilian Personnel), Chief, Policy and Program Development Division (Vickie Harris), Alexandria, Virginia.

11. 5 U.S.C. § 552a(d)(3) provides that the agency, after receiving an appeal, shall provide the appellant with a final agency decision within 30 days "unless, for good cause shown, the head of the agency extends such 30-day period."

12. More than 30 days have passed since COL Lee filed his appeal. The agency has not extended such period.

13. COL Lee therefore has exhausted his administrative remedies and this action is properly before this Court.

## V. STATEMENT OF FACTS

14. As an Army officer, COL Lee served our nation with honor and great distinction for over 29 years.

15. After the tragic events of September 11, 2001, COL Lee was mobilized to perform active duty in of the Office of the Chief, Army Reserve ("OCAR"). He arrived at the Pentagon to begin his duties on September 17, 2001, six days after the terrorist attacks of September 11, 2001.

16. COL Lee was mobilized to meet the OCAR requirement for round-the-clock staff supervision in the wake of those attacks, and because of his extensive prior experience in war planning and force integration activities.

17. COL Lee's official position and title during his mobilization period was Director of Staff. COL Lee's position was documented on the OCAR Mobilization Table of Distribution and Allowances (TDA), a personnel authorization intended to meet the increased manpower requirements of mobilization and war. COL Lee shared that title with COL (ret) Terry W. Lerch.

18. COL Lerch was aware of COL Lee's job title, and raised no objections or concerns about sharing the title with COL Lee. In practice, COL Lee was 'wartime' Director of Staff while COL Lerch served as 'peacetime' Director of Staff.

19. The division of staff supervision was as follows: COL Lee served as Director of Staff for all non-administrative matters, principally for all activities in support of Operation Enduring Freedom. COL Lerch exercised staff supervision responsibilities for administrative matters.

20. While serving as Director of Staff, COL Lee was directly supervised by COL (ret.) Malcolm B. Westcott. COL Lee's second-line supervisor was Lieutenant General ("LTG") Thomas J. Plewes.

21. During his period of mobilization, COL Lee performed numerous duties in addition to those required by the position of Director of Staff. COL Lee also exercised supervisory duties when serving as Acting Executive Officer to the Chief, Army Reserve (January 2002 through May 2002), and Acting Chief, Army Reserve, a position he occupied on several occasions in the absence of the Chief, Army Reserve.

22. COL Lee exercised supervisory responsibilities that included tasking subordinate officers and civilians, monitoring their compliance with work directives, fielding questions, and

providing advice and guidance. COL Lee performed these supervisory functions independent of Mr. Lerch.

23. COL Lee also performed these functions when Mr. Lerch was unavailable, and when required after official duty hours. COL Lee regularly tasked his staff without regard to his staff's peacetime rating chain.

24. After completing his one-year mobilization period in October 2002, COL Lee was retained on active duty for medical evaluation. He had suffered a heart attack during his mobilized service and had a number of other service-related medical conditions and disabilities that required evaluation prior to his retirement from the Army.

25. In January 2003, COL Lee was invited to accept the civilian position of Program Integrator, OCAR Chief Information Office (later named Enterprise Service Activity).

26. On March 23, 2003, COL Lee reported to work at the Pentagon as Program Integrator. In September, 2003, the Army transferred COL Lee, along with his position, to Ft. McPherson, GA.

**Army Regulation ("AR") 15-6 Investigation**

27. In December 2003, LTG James Helmly, Chief, Army Reserve, directed an investigation under AR 15-6 based on anonymous allegations that COL Lee unlawfully arranged his transfer to Ft. McPherson, received unauthorized TDY travel reimbursements, and improperly used his government cell phone. The scope of the investigation was later broadened to include all circumstances surrounding COL Lee's employment.

28. LTG Helmly selected as his investigating officer COL Patricia McDaniel, JA, USAR, a Reserve officer then mobilized and assigned to Ft. Hood, Texas. COL McDaniel commenced

her investigation on December 23, 2003. She completed her report of investigation on February 25, 2004.

29. After reviewing the available evidence, COL McDaniel issued the following findings of fact: 1) COL Lee never actually performed the job that he was ostensibly hired to perform at OCAR; 2) COL Lee resided in Atlanta, GA from the outset of his employment notwithstanding the fact that he was ostensibly hired to work in Washington, DC and was paid for that location; 3) COL Lee misused his cell-phone and that misuse resulted in $1,028.25 improperly paid by the government; 4) COL Lee improperly traveled TDY to his permanent duty station with the approval of his supervisor, Mr. Arthur (Rick) Taylor; and 5) COL Lee misrepresented his qualifications on his "RESUMIX" resume, such qualifications being the determining factor for eligibility to serve at the GS-15 level.

**Actions to Terminate COL Lee's Employment**

30. Based on COL McDaniel's findings of fact, by memorandum dated March 16, 2004, BG James Kelley informed COL Lee that he intended to remove him from the position of Program Integrator and terminate his federal service employment.

31. BG Kelley cited two reasons for the proposed removal and termination: 1) COL Lee's alleged falsification of his resume; and 2) alleged misuse of government issued cell-phone. Only these allegations, therefore, constituted the basis for the proposed adverse actions.

32. In response to requests from COL Lee and his counsel for additional time to response to the proposed removal and termination, by memorandum dated March 29, 2004 BG Kelley withdrew and cancelled the March 16, 2004 notice.

33. According to BG Kelley, he took this action "[i]n the interest of affording [COL Lee] the opportunity to fully respond to the allegations and because [COL Lee's] probationary period has expired....."

34. In the same memorandum, BG Kelley again advised COL Lee that he was proposing COL Lee's removal and termination based on the same two grounds presented in the March 16, 2004 memorandum.

35. On April 13, 2004, COL Lee submitted to BG Kelley materials responding to the second notice of proposed removal and termination.

36. COL Lee's submission included 15 exhibits containing documents demonstrating, among other things, that the allegations were baseless.

37. By memorandum dated April 20, 2004, BG Kelley informed COL Lee that his actions "do not warrant removal." BG Kelley maintained, however, that the charges of falsification of resume information and misuse of a government cell-phone were supported by a preponderance of the evidence.

38. In the same communication, BG Kelley notified COL Lee that the following actions would be taken: 1) 14 day suspension from employment without pay; and 2) placement of a copy of Standard Form 50, Notification of Personnel Action, in COL Lee's Official Personnel Folder.

39. COL Lee was suspended from employment from May 2, 2005 through May 15, 2005. COL Lee returned to duty on May 17, 2005 and continues to serve in the same position.

**Privacy Act Amendment Request**

40. In COL Lee's initial amendment request and on appeal, he provided documentary evidence, which included affidavits from COL Westcott, LTG Plewes, and others, demonstrating that the records he seeks to amend are factually incorrect.

7

41. In regard to the finding that COL Lee falsified his resume, he provided sworn affidavits from his two immediate supervisors, COL Westcott and LTG Plewes, who stated that COL Lee performed all the duties listed on his resume and that he did not falsify his resume.

42. According to COL Westcott, "I categorically state that the allegation that Mr. Lee falsified his resume is untrue. During the period in question, I served as the Deputy Chief of the Army Reserve. I was Mr. Lee's immediate supervisor. Mr. Lee's job title was Director of Staff. Mr. Lee shared equal responsibility for supervising the entire OCAR staff along with COL (ret) Terry Lerch."

43. LTG Plewes stated, "COL Lee's active service as Director of Staff began on 17 September 2001, shortly after the terrorist attacks of 11 September 2001. …In this mobilization augmentation position, as is common practice, COL Lee shared the job title and actual OCAR staff supervision responsibilities with COL Terry Lerch, the peacetime [Director of Staff}. COL Lerch retained responsibility and authority for OCAR staff administrative functions; COL Lee assumed responsibility and authority for OCAR staff functions relating to Operation Enduring Freedom."

44. In regard to the finding that COL Lee misused his government cell phone, COL Lee submitted official documents demonstrating that the investigating officer did not exercise due diligence, failed to consider readily available evidence, and improperly used erroneous inferences and assumptions in arriving at her factual findings.

45. After considering COL Lee's rebuttal to this allegation, BG Kelley determined that approximately 30% of the calls found "disallowed" by the investigator were in fact appropriate cell phone usage.

46. Notably, COL Lee received an exceptional performance appraisal for the time period in question. BG Kelley endorsed the appraisal.

**Consideration of COL Lee's Amendment Request by the Army**

47. In his application for the amendment of records pursuant to the Privacy Act, COL Lee requested the following amendments/corrections: "1) the AR 15-6 Report of Investigation ("ROI") be amended to show that the allegations addressed here were unsubstantiated; 2) the proposed termination of COL Lee's employment, issued by MG Kelley, be amended to show that such action was not taken; 3) the notice of suspension of employment be amended to show that such action was not taken; 4) the Standard Form 50 reflecting his 14-day suspension of employment and the reasons therefore be amended to show that such action did not occur; and 5) any and all other documents associated with or generated by the AR 15-6 investigation be amended to show that the allegations were unsubstantiated."

48. By undated letter, Lieutenant Colonel ("LTC") Howard Roth, Chief, Civilian and Administrative Law, informed counsel for COL Lee that "[y]our request to amend certain records pertaining to Mr. William Todd Lee was referred to our command for review. We have determined that the AR 15-6 investigation referred to in your correspondence is an agency not a privacy record and is therefore not subject to amendment under the provisions of the Privacy Act. We have returned the action to North Central Regional Civilian Personnel Operations Center at Rock Island, IL for further action."

49. By letter dated 14 February 2006, Ms. Patricia A. Ofslager, FOIA Officer, Civilian Personnel Operations Center, North Central, informed counsel for COL Lee that "[t]he request to amend records which you have filed on behalf of Mr. Lee seeks to correct the conclusions and opinions reached in the AR 15-6 proceedings and to rectify various alleged errors and omissions

in the conduct of the investigation. These areas are not subject to alteration under the Privacy Act. The Privacy Act does not allow an agency to alter records that accurately reflect an administrative decision, no matter how contestable the conclusions may be. Based on our review, the records in Mr. Lee's personnel file pertaining to the AR 15-6 proceedings accurately reflect the decision reached and the bases for that decision. We, therefore, must respectfully decline your request."

50. By letter dated 28 April 2006, BG Oscar R. Anderson, Chief of Staff, USARC, informed COL Lee of his proposal to remove him from federal service. In attempting to justify the proposed action, BG Anderson stated, "I have considered your employment record, including the fact that you have approximately three years of Federal civilian service to your credit. <u>I also have considered your previous record of discipline. You were suspended for 14 days in May 2004 for falsification of your resume in your job application and misuse of government resources</u>. Your conduct has resulted in a complete loss of trust in you."

## VII. <u>LEGAL CLAIM</u>

### <u>Violation of the Privacy Act</u>

51. Defendant has a duty under the Privacy Act to amend an agency record when that record is not accurate, relevant, timely, or complete.

52. COL Lee has demonstrated the facts upon which the contested records are based are false and unsupportable by the evidence.

53. The allegation that COL Lee falsified his resume is frivolous and directly contradicted by sworn statements of his supervisors at the time.

53. Defendant improperly refused to amend COL Lee's records as requested.

54. Defendant's refusal to amend the record has adversely effected COL Lee's current federal government employment and prospects for future employment, whether governmental or non-governmental.

55. Defendant has failed to maintain COL Lee's records with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to COL Lee that may be made on the basis of such record.

56. As a consequence of Defendant's knowing and willful failure to maintain COL Lee's records with the required level of accuracy, relevance, timeliness, and completeness, a determination has made which is adverse to COL Lee.

57. Defendant's willful and intentional refusal to amend these agency records has caused actual damages to plaintiff, and defendant is liable to COL Lee for actual damages or statutory damages, whichever is greater.

58. Because this is an amendment request under the Privacy Act, this Court is required to conduct a *de novo* review of COL Lee's amendment request. 5 U.S.C. § 552a(g)(2)(A).

**PRAYER FOR RELIEF**

WHEREFORE, COL Lee prays that this court grant the following relief:

a. Direct the amendments of records specified by COL Lee in his application to the agency;

b. Award COL Lee damages for the Defendant's intentional and willful refusal to amend the specified records, and for Defendant's intentional and willful maintenance of factually incorrect records in COL Lee's personnel records;

c. Order other equitable and statutory relief that this Court deems appropriate;

d. Award to COL Lee, as against Defendant, payment of all costs and reasonable attorney fees incurred in this action.

Respectfully submitted,

Raymond J. Toney (Bar No. NY0066)
*Attorney for Plaintiff*

The Law Office of Raymond J. Toney
34-16 30th Avenue, Third Floor
Astoria, NY 11103
Tel: 718-726-3656  Fax: 718-504-4735
E-mail: rjtoney@rjtlaw.net