UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MR. WILLIAM TODD LEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-0884 (JDB) |
| | ) |
| THE HONORABLE FRANCIS J. HARVEY, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS
OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Plaintiff has failed to state a claim upon which relief may be granted because he impermissibly seeks to collaterally attack a federal official's exercise of judgment. Kleiman v. Dept. of Energy, 956 F.2d 335, 337-38 (D.C. Cir. 1991). Additionally, Plaintiff's claim fails because the Civil Service Relief Act ("CSRA") (5 U.S.C. §§ 1101 et. seq.) is the comprehensive system and exclusive remedy for challenging an agency's judgment in personnel matters. United States v. Fausto, 484 U.S. 439, 455 (1988). Plaintiff makes four arguments against defendant's motion to dismiss or in the alternative, summary judgment. All are without merit. The D.C. Circuit's recent decision in *McCready v. Nicholson,* 2006 U.S. App. LEXIS 23728 (D.C. Cir. 2006)(*hereinafter McCready*), does not change the outcome, although it does modify the analysis to some degree.

### I. The *McCready* Decision

In *McCready,* the Court reviewed a Privacy Act challenge brought by a former Senior Executive Service ("SES") employee of the Department of Veteran Affairs alleging that the Department of Veterans Affairs ("VA") and the VA Office of Inspector General ("OIG") committed multiple violations of the Privacy Act, 5 U.S.C. § 552a, giving rise to alleged adverse determinations against Ms. McCready.

The Court reviewed actions brought under 5 U.S.C. § 552a(g)(1). The four possible actions under that subsection are: first, Amendment lawsuits under 5 U.S.C. § 552a(g)(1)(A); second, Access lawsuits under 5 U.S.C. § 552a(g)(1)(B); third, Accuracy lawsuits under 5 U.S.C. § 552a(g)(1)(C); and, fourth, lawsuits for Other Damages under 5 U.S.C. § 552a(g)(1)(D). The Court held that the first two actions (Amendment and Access) cannot address records not within a system of records and require administrative exhaustion, while both Accuracy and Other Damages lawsuits require neither administrative exhaustion, *McCready* at 35-36, nor are limited to records within a system of records.  *Id*., at 21-22.

While Plaintiff does not specify which subsection he brings his suit under, he alleges a failure to amend (complaint ¶ 54) and a failure to accurately maintain the record. Because the government has demonstrated that the AReg 15-6 Report of Investigation is not maintained in a system of records, summary judgment on Plaintiff's Amendment claim is appropriate. Likewise, to the extent Plaintiff alleges an Access claim under 5 U.S.C. § 552a(g)(1)(B), the lack of a system of records is fatal to Plaintiff's claim.

This proof, however, does not affect Plaintiff's accuracy claim under 5 U.S.C. § 552(g)(1)(C) as it allows Plaintiff the possibility to prevail even if the A.Reg. 15-6 Investigation is not a record within a system of records. *Id*.

The accuracy lawsuit under 5 U.S.C. § 552(g)(1)(C) is the most favorable characterization for the Plaintiff of the instant action. To bring a claim under § 552a(g)(1)(C), the Plaintiff need not address how agencies maintain their systems of records, but instead must show that: (1) he has been aggrieved by an adverse determination; (2) the Army failed to maintain his records with the degree of accuracy necessary to assure fairness in the determination; (3) the Army's reliance on the inaccurate record was the proximate cause of the adverse determination. *McCready* at 18-19 (internal citations omitted).

The decision in *McCready* also clarified what Plaintiff is entitled to in an accuracy suit and what he must show to maintain such a suit. *McCready* makes clear that Plaintiff is not entitled to what he seeks, a *de novo* review of the determination that he falsified his resume and that he misused government resources. The Appellant in *McCready,* like Plaintiff here, challenged the ultimate determination made by an investigation. However, unlike Plaintiff, Ms. McCready was able to point to a specific **fact** which she disputed, her attendance at a Senate Finance Hearing on the day she was alleged not to have been at work. In finding that Ms. McCready had sufficiently alleged a factual inaccuracy the Court stated:

> we fail to see how McCready's presence at a meeting is not a "fact" capable of verification and why the VA need not correct that fact **or show that it took reasonable steps to verify its accuracy**.

*Id*. at 31(emphasis added).

3

Plaintiff contests two determinations he alleges are inaccurate: (1) that COL Lee falsified his resume; and (2) that he misused government resources. These determinations were reached by BG Kelly, U.S. Army Reserve Command (USARC), Chief of Staff, when he was considering removing Plaintiff from his position. BG Kelly considered the evidence submitted by Plaintiff. Compl. ¶ 35-37, See Also Defendant's Exhibit 2 (Notice of Decision on Proposed Removal). Indeed, BG Kelly made determinations favorable to Plaintiff after reviewing his submissions. Compl. ¶ 45. Plaintiff clearly submitted evidence challenging the determinations listed above. He cannot however point to any particular fact capable of verification which is false and cannot show that the defendant failed to take reasonable actions to verify the allegations made.

## II. The A.Reg. 15-6 Investigation is not a Record Within a System of Records

Plaintiff's first assertion is that, in practice, the A.Reg. 15-6 Investigation must be a record within a system of records because the Army routinely responds to Privacy Act requests for A.Reg 15-6 investigations. Pl. Op. at 15. Plaintiff argues

> The fact of the matter must be that even though the ROI is assigned a log number under the automated Case Management System, personal identifying information also must be entered that allows the agency to retrieve ROIs sought by the person to whom the ROI pertains. If no personal identifier is used to store and retrieve the ROI, a request by COL Lee for a copy of the ROI under the Privacy Act would necessarily be met with the response that the existence of such records cannot be ascertained.

*Id*. Plaintiff ignores the plain language of 5 U.S.C. 552a(a)(5) and the established precedent from this Circuit that capability to retrieve records is insufficient to create a system of records. As most recently stated in *McCready*

> *Our own precedent has explained that "'retrieval capability is not sufficient to create a system of records'; the agency must in practice retrieve information by personal identifier." Maydak,*

*363 F.3d at 520 (quoting Henke, 83 F.3d at 1460-61) (emphasis added).*

*McCready* at 26.  The Declaration of Ms. Annette Fears, Administrative Officer in the Office of the Staff Judge Advocate for the United States Army Reserve Command, demonstrates ROIs are not filed or retrieved by name, social security number, or any other personal identifier.  Ex. E. ¶ 3.  Obviously, that does not mean that there is no capability to retrieve by name of other identifying information.  A Privacy Act or FOIA request obligates the government to do more than abide by its normal retrieval method but instead requires a search reasonably calculated to uncover responsive records.

In practice, or in fact, the A.Reg. 15-6 Investigation is not a record within a system of records.  Plaintiff appears to tacitly acknowledge that the AReg 15-6 investigation is not contained in a system of records.  The policy rationale behind this limitation to a system of records cited in *McCready*, at 12 is (internal citations omitted), "to protect the privacy of individuals identified in information systems maintained by federal agencies."  Plaintiff contradicts himself by simultaneously asserting that the two allegedly inaccurate, derogatory findings contained within the A.Reg. 15-6 could adversely affect future employment, yet Plaintiff does not challenge the remaining three derogatory findings, which were not approved, to remain in the A.Reg. 15-6 Investigation.  Pl. Op. 2 (stating only two of the findings are relevant to this suit), Pl. Op. 5 (listing each of the five adverse findings).  Plaintiff is obviously concerned with the release of the conclusions reached by LTG Hemsley in approving the determination and not the findings of fact made by the investigating officer.

It is important to remember that Plaintiff also asserts that these are findings of fact, Pl. Op. at 20, as opposed to judgments. If Plaintiff's assertions are correct (that the A.Reg. 15-6 is both a record within a system of records and that the findings of fact are not judgments), then Plaintiff has created a contradiction. If Plaintiff is sincere that "Defendant's refusal to amend the record has adversely effected...prospects for future employment," Plaintiff's Complaint (hereinafter Pl. Compl.) 11, and if Plaintiff expects the Court to accept that the A.Reg. 15-6 Investigation is retrievable by Plaintiff's name, then Plaintiff gains nothing by challenging only two of the five adverse findings in the A.Reg. 15-6 Investigation. If Plaintiff is concerned about future employment, then, using Plaintiff's own assertions, why would Plaintiff not logically understand or acknowledge that the remaining three adverse findings of fact would also adversely impact future employment prospects? Two answers are suggested: first, the Plaintiff has an understanding that the Case Management System, Def. Mot. 3-4, 11-13, will not produce the A.Reg. 15-6 Investigation if a "by name" or "by number" search were conducted using Plaintiff's information; and, second, Plaintiff also understands that Lieutenant General Helmly's decision to approve only two of the five findings of fact carries some significance.

### III. Plaintiff's Action is a Collateral Attack on an Agency Personnel Decision

Plaintiff next alleges that he is seeking to amend facts and not judgments. However, as explained above, *McCready* reaffirmed that:

> the Privacy Act "allows for correction of facts but not correction of opinions or judgments. But as long as the information contained in an agency's files is capable of being verified, then, under subsection[] . . . (g)(1)(C) of the Act, the agency must take reasonable steps to maintain the accuracy of the information to assure fairness to the individual."

*McCready* at 30 (internal quotations and citations omitted). Plaintiff clearly submitted evidence challenging the determinations listed above. He cannot, however, point to any particular fact capable of verification that is false and cannot show that the defendant failed to take reasonable actions to verify the allegations made. Plaintiff points to the nature of an A.Reg 15-6 investigation as a fact-finding investigation to argue that he is challenging facts. Plaintiff fails to appreciate that he is challenging the determinations made by two decision makers based on the findings and recommendations. Both LTG Helmsley, in approving the findings and recommendations, and BG Kelly in initiating the removal had to make a determination based on the evidence. Those determinations are opinions not facts.

**IV. Plaintiff's Attacks on the D.C. Circuit's Opinion in *Kleiman v. Dept. of Energy* is Unavailing**

Finally, Plaintiff attacks Defendant's reliance on *Kleiman v. Dept. of Energy*, 956 F.2d 335 (D.C. Cir. 1991), by attempting to distinguish the present case and then by criticizing the Court's reasoning. Neither attempt is availing. Plaintiff argues that the CSRA is only an exclusive remedy "where its jurisdictional requisites are established." PL Opp at 27. However, Plaintiff is in the same position as the Appellant in *Kleiman*. Both cases involve actions for which the CSRA does not allow judicial review. Indeed, the chief concern of the Court of Appeals was to not upset the CSRA's remedial scheme by granting judicial review over actions where the CSRA did not provide for it. The Kleiman Court held:

> The need to read the Privacy Act without doing violence to the Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111 (codified throughout Title 5, U.S.C.) (CSRA), supports our conclusion that the former does not encompass this type of claim. This court has refused to allow "the exhaustive remedial scheme of the CSRA" to be "impermissibly frustrated," *Carducci v. Regan*, 230

> App. D.C. 80, 714 F.2d 171, 174 (D.C. Cir. 1983), by granting litigants, under the aegis of the Privacy Act or otherwise, district court review of personnel decisions judicially unreviewable under the CSRA. See *Hubbard v. United States EPA*, 257 App. D.C. 305, 809 F.2d 1, 4-5 (D.C. Cir. 1986), aff'd in part on other grounds sub nom. *Spagnola v. Mathis*, 859 F.2d 223 (D.C. Cir. 1988) (en banc); see also *Houlihan v. OPM*, 909 F.2d 383, 385 (9th Cir. 1990); *Towers v. Horner*, 791 F.2d 1244 (5th Cir. 1986).

*Kleiman v. Department of Energy*, 956 F.2d 335, 338 (D.C. Cir. 1992). Plaintiff's attempts to distinguish *Kleiman* are unavailing.

Plaintiff next argues that the Circuit was wrong in *Kleiman*. Plaintiff argues that the Circuit Court's decision is "curious" Pl. Opp at 27 ("Defendant's arguments that the CSRA provided the exclusive remedy for COL Lee's challenges are curious, as are those advanced by the D.C. Circuit in *Kleiman*, and warrant closer scrutiny") and "disconcerting" Pl. Opp at 28 ("What is most disconcerting about the *Kleiman* decision"). Even if the decision in *Kleiman* were not binding on this Court(which it is), the reasoning of the case was correct. Congress in enacting the CSRA established an exhaustive remedial scheme for Federal personnel actions. *Kleiman* 956 F. 2d at 338. This scheme represented Congressional judgment about what types of personnel actions warranted judicial review. The Circuit Court's concern for the integrity of that system was both rational and well founded. Plaintiff here seeks to challenge a fourteen day suspension, an action which Congress elected to make un-reviewable.

**V.  Even Assuming Reviewability, Defendant is Entitled to Summary Judgment because the Army took reasonable steps to ensure the accuracy of its determinations**

Even if Plaintiff were challenging facts, Defendant is entitled to Summary Judgment. The fact that the A.Reg 15-6 is not maintained in a system of records entitles defendant to summary judgment on all claims other than an accuracy claim. The Circuit Court's decision in

*McCready* makes clear that an agency may prevail in an accuracy challenge by showing that it "took reasonable steps to verify its accuracy." A summary of the process that resulted in the A.Reg. 15-6 Investigation demonstrates the thoroughness and deliberation that produced the final Report of Investigation (ROI) and that the approved findings were a reasonable and proper judgment.

First, there was a decision by Lieutenant General Helmly, Chief, Army Reserve, to appoint an A.Reg 15-6 Investigation into Plaintiff's alleged misconduct. Pl. Compl. ¶ 27. The A.Reg 15-6 Investigation was conducted by an officer (Colonel) with the support of a legal advisor. Administrative Record ("AR") at 1. The A.Reg. 15-6 Investigation was not rushed, with appointment on December 18, 2003, and conclusion on February 25, 2004. AR at 2. The A.Reg 15-6 Investigation was submitted to Lieutenant General Helmly with 13 findings and 9 recommendations. Lieutenant General Helmly approved the findings and recommendations with substantial edits and added a fourth recommendation. AR at 5. Lieutenant General Helmly, after approving the investigation, referred the A.Reg. 15-6 Investigation to "the Chief of Staff for his consideration as to the appropriateness of disciplinary action against Mr. Lee." AR at 5. The record indicates that reasonable steps were taken to maintain accuracy throughout the process.

BG Kelley, decided initially to terminate Plaintiff's employment, Pl. Compl. ¶ 30, but "[i]n response to requests from COL Lee and his counsel for additional time to respond to the proposed removal and termination...withdrew and cancelled the...notice." Pl. Compl. ¶ 32. "COL Lee submitted to BG Kelley materials responding to the second notice" and "COL Lee's submission included 15 exhibits containing documents demonstrating, among other things, that

the allegations were baseless." Pl. Compl. ¶¶ 35-36. BG Kelley then made the decision to suspend Plaintiff rather than terminate his employment. Exhibit 2 and Compl. ¶¶ 37,38.

As discussed above, the agency ensured that the investigation was accurate by providing the Investigation Officer ("IO") a legal advisor and other support. AR at 1. The appointing and approving authority exercised discretion in approving the findings and recommendations that he deemed appropriate. LTG Helmly delegated the matter to the Chief of Staff for a determination regarding discipline. In sum, many officials took part in the preparation of the A.Reg. 15-6 Investigation and each made decisions regarding the accuracy of the alleged misconduct. BG Kelley also considered 15 exhibits from the Plaintiff. Reasonable steps were taken to ensure that BG Kelley could rely on the information before him when making the personnel decision.

## VI. CONCLUSION

For the reasons stated above and those stated in our opening Motion, defendant requests that the Court grant his motion to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted or in the alternative, grant summary judgment.

Respectfully submitted,

_____/s_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____/s_____
RUDOLPH CONTRERAS D.C. Bar No. 434122
Assistant United States Attorney

                         _____/s_____
                         KEVIN K. ROBITAILLE
                         Special Assistant U.S. Attorney
                         555 Fourth Street, N.W.,
                         Washington, D.C. 20530
                         (202) 353-9895