UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM TODD LEE ) <br> ) <br> *Plaintiff,* ) <br> ) <br> v. ) <br> ) <br> THE HONORABLE FRANCIS J. HARVEY ) <br> Secretary of the Army ) <br> ) <br> *Defendant*. ) <br> ) | Case No. 06-0884 (JDB) |

## PLAINTIFF'S SURREPLY

Plaintiff, Colonel (ret.) William Todd Lee, respectfully submits this surreply in accordance with the order of the Court. COL Lee first addresses the recent decision of *McCready v. Nicholson*, 2006 U.S. App. LEXIS 23728 (D.C. Cir., Sept. 19, 2006). He then applies the pertinent findings and holdings of that decision to the factual and legal issues raised in this action. COL Lee concludes that under *McCready* and the cases previously cited to the Court, denial of Defendant's motion to dismiss or for summary judgment is proper.

## ARGUMENT

### 1. THE IMPACT OF *MCCREADY V. NICHOLSON* ON THE INSTANT CASE

COL Lee alleges that Defendant has violated the Privacy Act by failing to maintain his records with the degree of accuracy necessary to assure fairness in the adverse employment determination made against him, as required by 5 U.S.C. § 552(g)(1)(C). COL Lee alleges that Defendant violated the Act with respect to five distinct records: (1) the investigation conducted by Defendant under Army Regulation 15-6; (2) the notice of proposed removal from federal service dated March 16 2004; (3) the notice of proposed removal from federal service dated

March 29, 2004; (4) the notice of suspension of employment for 14 days; and (5) the Standard Form ("SF") 50 that records the adverse action taken against him. Each of these records is subject to amendment or expungement under the law of this Circuit.

**McCready v. Nicholson**

*McCready v. Nicholson* addressed claims by the appellant, an employee of the federal government. McCready alleged that the Veterans Administration ("VA"), in the course of an audit into allegations that she mismanaged the VA Office of Congressional Affairs, which she headed, created "records about her that were filled with inaccuracies, and that she is entitled under the Privacy Act to review and amend those records." *Id*. at *1.  She also alleged that the VA improperly disclosed the records to the media and public, and illegally used them to take adverse action against her. *Id*. at *1-2.  After reviewing the audit and McCready's response to it, the VA determined that no disciplinary action was warranted. *Id*. at *4.  The District Court granted summary judgment to the defendant.

On appeal, the D.C. Circuit considered, *inter alia*, whether a plaintiff seeking the amendment of records pursuant to 5 U.S.C. § 552(g)(1)(C) must prove that the records sought to be amended or expunged are contained within a system of records as understood under the Act. The court concluded that "… to bring a claim under 5 U.S.C. § 552(g)(1)(C), an individual need not address how agencies maintain their systems of records…." *Id*. at *22.

The court expressly held that "… the text of subsection (g)(1)(C) does not require that a 'record' be within a 'system of records….'" *Id*. at *24 (citations omitted).  Rather, an individual need show that: (1) he or she has been aggrieved by an adverse determination; (2) the agency failed to maintain the records with the degree of accuracy necessary to assure fairness in the determination; and (3) the agency's reliance on the inaccurate records was the proximate cause

2

of the adverse determination. *Id*. at \*21-22 (citations omitted). *McCready* thus disposes altogether of the argument made in this case that COL Lee's request to amend the report of investigation must fail because the report of investigation is not maintained in a Privacy Act "system of records."

*McCready* also impacts Defendant's argument that the Civil Service Reform Act ("CSRA") forecloses for COL Lee the amendment or expungement remedy provided by 5 U.S.C. § 552(g)(1)(C). The decision principally relied on by Defendant for that proposition is *Kleiman v. Department of Energy*, 956 F.2d 335 (D.C. Cir. 1991). *Kleiman* ruled that "[t]he need to read the Privacy Act without doing violence to the Civil Service Reform Act of 1978 … supports our conclusion that the former does not encompass this type of claim. This court has refused to allow 'the exhaustive remedial scheme of the CSRA' to be 'impermissibly frustrated' … by granting litigants, under the aegis of the Privacy Act or otherwise, district court review of personnel decisions judicially unreviewable under the CSRA." *Id*., at 338 (internal citations omitted).

*McCready* and *Kleiman* involved similar circumstances. Both plaintiffs were federal employees. Neither had been disciplined for misconduct or other reasons. Neither plaintiff had a right to petition the Merit Systems Protection Board ("MSPB") for relief under the CSRA. Both sought the amendment of records they considered unlawfully maintained under 5 U.S.C. § 552(g)(1)(C).

*McCready* did not directly address *Kleiman's* ruling that the CSRA should be construed to preclude relief under 5 U.S.C. § 552(g)(1)(C) and it would not appear that the question was presented to the court. Because of the factual similarities between *Kleiman* and *McCready*, however, and the court's decision to remand the case to the District Court for discovery and

further proceedings on the appellant's subsection 552(g)(1)(C) claim, this Court may treat *McCready* as a departure from *Kleiman* and to have impliedly overruled it.

Even if the Court chooses not to adopt the above approach to *Kleiman*, the distinctions COL Lee previously drew between the instant case and *Kleiman* provide ample ground for the Court to not follow *Kleiman* without offending the principle of *stare decisis*. COL Lee reiterates his argument that the CSRA is not offended by subsection 552(g)(1)(C) or any other provision of law in situations where the CSRA provides no rights or cause of action. Congress inarguably enacted the CSRA to provide an exclusive, comprehensive remedial scheme for certain federal employment disputes. Yet had Congress desired to except employment disputes from subsection 552(g)(1)(C) due to the concerns expressed in *Kleiman*, it could have done so. Yet it did not.

*McCready* also impacts the case at bar as regards Defendant's contention that the records COL Lee seeks to amend or expunge are judgments or opinions rather than facts. *McCready* clarified this question considerably. In rejecting the District Court's finding that the appellant failed to show that any of the statements she challenged were inaccurate facts, the court stated, "[w]e agree with the District Court that, generally speaking, the Privacy Act 'allows for correction of facts but not correction of opinions or judgments. But '[a]s long as the information contained in an agency's files is capable of being verified, then, under [552(g)(1)(C)] of the Act, the agency must take reasonable steps to maintain the accuracy of the information to assure fairness to the individual.'" 2006 U.S. App. LEXIS 23728 at *48-49 (quoting *Sellers v. Bureau of Prisons*, 959 F.2d 307, 312 (D.C. Cir. 1992).

One of the facts McCready challenged was that she did not work on a particular day. *Id*. at *49. The evidence to support that finding of fact was that McCready made calls that day from her government issued cell phone to her office. *Id*. McCready said that she attended a

4

congressional committee meeting on the day in question. *Id*. The District Court "concluded that the Inspector General was merely expressing an 'opinion' on what McCready's telephone calls probably meant…." *Id*.

The court disagreed, stating, "… we fail to see how McCready's presence at a meeting is not a 'fact' capable of verification and why the VA need not correct the fact or show that it took reasonable steps to verify its accuracy. Either McCready's witnesses will attest that she attended the meeting, she did not, or they cannot remember. But the VA has not explained why contacting these witnesses, or otherwise taking 'reasonable steps' to verify the Inspector General's assertion … was not necessary in light of her having brought her attendance at the committee to the Inspector General's attention." *Id*. at * 49-50.

Like McCready, COL Lee also seeks to amend or expunge specific findings of fact that are susceptible of verification. Either COL Lee lied on his resume or he did not, and either he misused his government cell phone at government expense or he did not. COL Lee presented compelling evidence to the Army that he committed neither offense. The Army made no effort to verify the accuracy of the findings of fact contained in the records COL Lee seeks to correct.

### 2. The Army Failed to Take Reasonable Steps to Ensure the Accuracy of its Records

Defendant argues that "*McCready* makes clear that an agency may prevail in an accuracy challenge by showing that it 'took reasonable steps to verify its accuracy.'" Def.'s Reply at 9. Defendant contends that "a summary of the process that resulted in the A.Reg. 15-6 Investigation demonstrates the thoroughness and deliberation that produced the final Report of Investigation (ROI) and that the approved findings were a reasonable and proper judgment." *Id*. COL Lee argues in reply that the very process Defendant relies on as evidence of "reasonab;e steps"

demonstrates that the Army acted intentionally and willfully in failing to maintain his records with the required accuracy.

During the time period covered by the Army's investigation of the allegation that COL Lee falsified his resume, he was serving as Director of Staff, Office of the Chief, Army Reserve ("OCAR"). Compl. ¶ 17. His position description was documented on the OCAR Mobilization Table of Distribution and Allowances and was a personnel authorization intended to meet the increased manpower requirements of mobilization and war after the terrorist attacks of September 11, 2001. COL Lee shared the job title with COL Terry Lerch. *Id*.

While serving as Director of Staff, OCAR, COL Lee was supervised by COL Malcolm B. Westcott. Compl. ¶ 20. His second-line supervisor was Lieutenant General Thomas J. Plewes, then-Chief, Army Reserve. *Id*. In his response to his proposed removal from federal service, COL Lee submitted statements from COL Westcott and other Army officers familiar with his duties. Each testified that COL Lee performed the duties he subsequently listed on his resume. In support of COL Lee, COL Westcott informed the Army that "I categorically state that the allegation that Mr. Lee falsified his resume is untrue. … His job title was Director of Staff and he shared equal responsibility for supervising the OCAR staff with COL Terry Lerch, the peacetime Director of Staff." Admin. Rec. at 745.

In his application to the Army for the correction of his records, COL Lee obtained additional sworn statements testifying that he did not falsify his resume. One statement was provided by Lieutenant General Plewes. According to the general, "… COL Lee shared the job title and actual OCAR staff supervision responsibilities with COL Terry Lerch, the peacetime [Director of Staff]. COL Lerch retained responsibility and authority for OCAR staff administrative functions; COL Lee assumed responsibility and authority for OCAR staff

functions relating to Operation Enduring Freedom." Admin. Rec. at 736. COL Timothy Mason, then-Deputy Director of Army Reserve Force Programs, stated under oath that "… COL Lee performed the duties of OCAR Director of Staff and regularly exercised supervisory authority over myself and other OCAR staff members." Admin. Rec. at 738.

The investigating officer, COL Patricia McDaniel, did not interview anyone other than COL Lee and COL Lerch. She did not ask COL Lee if there were other individuals she should interview. Nor does it appear that she reviewed the OCAR Mobilization Table of Distribution and Allowances or any other relevant documents. She was faced with diametrically opposed evidence—the statements of COL Lee and COL Lerch—and simply chose to believe COL Lerch without further inquiry.

The subsequent reviews and approvals of the report of investigation failed to ensure that the factual findings and the records containing them were accurate. No reasonable effort was made to do so. An even cursory review of the report of investigation raises numerous red flags about the allegation that COL Lee falsified his resume. And although Lieutenant General Helmly, the approving authority, was not a lawyer, the report of investigation was reviewed by counsel. The reviewing attorneys were negligent in failing to ensure a complete and impartial investigation and in verifying that the factual findings were supported by a preponderance of the evidence. At a minimum, the report should have been returned to COL McDaniel for additional investigation. General James Kelley, the officer who proposed COL Lee's removal and approved his suspension without pay likewise had a duty to ensure the accuracy of the Army's records, yet did not do so.

As regards the finding of fact that COL Lee misused his government cell phone, the record is equally clear that the Army failed to take reasonable steps to ensure the accuracy of its

7

records. Under the Freedom of Information Act ("FOIA"), COL Lee obtained documents demonstrating the non-existence of an OCAR cell phone usage policy during the period in question, the lack of dissemination of a policy, and the lack of monitoring of cell phone usage by OCAR officials. Enclosure 1. Those documents were available at the time COL McDaniel conducted her investigation of COL Lee.

Both in preparing his response to the proposed removal and in a subsequent FOIA request, COL Lee attempted to obtain a copy of the Army cellular phone contract that applied to his phone service and that would tend to prove or disprove the allegation that he incurred costs to the government. The Army has been non-responsive to all of those requests.

The evidence COL Lee submitted in defense of his proposed removal and in support of his Privacy Act amendment request to the Army was more than sufficient to raise concerns about the accuracy of the factual finding that he misused his government cell phone. Despite COL Lee's submissions, however, the Army failed to take reasonable steps to ensure the accuracy of the records in violation of subsection 552(g)(1)(C).

In sum, Defendant is correct that the investigating officer and the reviewing officials had ample opportunity to verify the accuracy of the findings of fact COL Lee now contests. However, the officials were presented with high conflicting evidence yet made no effort to resolve what were readily apparent disputes and discrepancies. COL Lee states a claim upon which relief may be granted and the evidence of record requires the denial of Defendant's motion.

## CONCLUSION

Based on the foregoing, COL Lee respectfully submits that Defendant's motion to dismiss or for summary judgment must be denied.

Respectfully submitted,

/s/

Raymond J. Toney (NY0066)
The Law Office of Raymond J. Toney
34-16 30th Avenue, Third Floor
Astoria, NY 11103
Tel: 718-726-3656
Fax: 718-504-4735
E-mail: rjtoney@rjtlaw.net

*Attorney for Plaintiff*

9