# ENCLOSURE 1

**Summary Audit Report**

**Cellular Telephones (Report No. 30-00)**

**1. Introduction.** This summary report provides the results of an Army Reserve-wide, quick response audit of cellular telephones. This audit was requested by the Chief, Army Reserve (CAR), and included in the CY 00 Annual Internal Review (IR) Plan approved by the CAR on 7 Jan 00. Also, the USARC Deputy Commanding General (DCG) directed all USARC major subordinate commands (MSCs) IR offices to perform this review.

**2. Objectives, Scope and Method of Review**

    a. Objective(s). Our overall objective was to determine whether the CAR's guidance on cellular telephones was being adhered to, and whether management controls were established and operating as intended.

    b. Scope. The scope included cellular telephones at the HQ, USARC; OCAR; AR-PERSCOM; and, all USARC MSCs. Subject to availability of records, the HQ and MSC IR auditors reviewed all cellular telephone use for the period 1 Jan 99 through 30 Mar 00. The audits were performed during the period Feb through Jun 00.

    c. Method of Review. The HQ and MSC IR auditors employed a variety of methods to review cellular telephones. At each location auditors interviewed appropriate staff personnel and obtained and reviewed documentation to gain an understanding of:

- policies and procedures governing cellular telephone use;
- cellular telephone acquisition process;
- request, justification, and issuance of cellular telephones;
- property accountability of cellular telephones;
- billing and payment process of itemized cellular telephone bills; and,
- management controls, as they relate to cellular telephones.

    d. We performed the audit in accordance with generally accepted government auditing standards and, accordingly, included such tests of internal controls as were considered necessary under the circumstances.

**3. Audit Results.** We found no CAR directed OCAR or USARC policy or guidance regarding cellular telephones. However, the HQ USARC, AR-PERSCOM, and some MSCs had locally published policy memoranda establishing criteria for the appropriate use and control of cellular telephones. Thirty-one of the 36 MSCs reporting had cellular telephones within their commands. Twenty-two of the 31 MSCs, in addition to HQ, USARC, AR-PERSCOM, and, OCAR, reported findings or problems with cellular telephones. 

The auditors found specific problems as follows:

- The three HQs, and seven of 22 MSCs reported a lack of policy guidance over the justification; issue; and use of cellular telephones;

**Summary Audit Report**

**Cellular Telephones (Report No. 30-00)**

- Eight of 22 MSCs reported no risk assessments or evaluations of management control weaknesses had been performed;

- Two of the three HQs, and 7 of 22 MSCs reported a lack of accountability on property records;

- The 3 HQs, and 11 of 22 MSCs reported a lack of review of itemized cellular telephone bills; poor record keeping; and missing telephone bills.

- One HQs, and 3 of 22 MSCs reported suspected unauthorized, or "abuse" of cellular telephones, and the appearance that cellular telephones were used for convenience rather than necessity.

- Unused, or seldom used, cellular telephones incurring charges were appropriately turned-in and deactivated to avoid charges;

Additionally, we found insufficient documentation to determine whether:

- Cellular telephones were appropriately justified and issued to support only mission essential requirements;

- Cellular telephones were properly hand-receipted to users.

## 4. Potential Benefits

The auditors reported a total of 1,236 cellular telephones throughout the Army Reserve with annual costs of $343,598, and annual estimated potential monetary benefits totaling $34,382. We did not specifically look for abuse of cellular telephone use, however, did find instances of inappropriate use and at one location received reimbursement for misuse. Cellular telephones, their annual costs, and potential monetary benefits, throughout the Army Reserve are illustrated below:

| Location | # of Cell Phones | Annual Costs | Potential Annual Monetary Benefits |
|---|---|---|---|
| OCAR | 93 | $12,215 | $ 4,000 |
| HQ, USARC | 33 | 20,714 | 6,904 |
| AR-PERSCOM | 36 | 11,484 | 3,134 |
| MSCs | 1,074 | 299,185 | 20,344 |
| Totals: | 1,236 | $343,598 | $34,382 |

Our computations of potential monetary benefits are at Appendix A.

2

**Summary Audit Report**

**Cellular Telephones (Report No. 30-00)**

5. Actions Taken. **We briefed the USARC CofS, the OCAR DOS, and CIO on the audit results, and offered suggestions for corrective actions. Additionally, the MSC IR auditors made numerous suggestions for corrective action to their local commanders. MSC IR auditors are required to follow-up on these corrected actions. The CIO concurred with the audit observations, conclusions, and suggestions for corrective action and on 1 Dec 00 issued a policy memorandum on the use and safeguarding of government issued cellular telephones. The memorandum was addressed to Commanders, MSCs and Installations and USARC Directors/Chiefs and SGS and included our recommended corrective actions to:**

- Validate the need for currently issued cellular telephones;

- Establish and issue a policy governing cellular telephones at OCAR, USARC, and AR-PERSCOM. Include in the new policy memorandum the requirement to:

    - Establish criteria for justifying and approving the acquisition of cellular telephones;

    - Require requests and justifications for cellular telephones be in writing, and maintained on file with the hand-receipt;

    - Review and revalidate the need for cellular telephones every two years;

    - Identify and turn in cellular telephones that are no longer needed, or seldom used.

Exhibit 14

DEPARTMENT OF THE ARMY
OFFICE OF THE CHIEF, ARMY RESERVE
WASHINGTON, DC 20310-2400

REPLY TO
ATTENTION OF

S: 6 Sep 02

DAAR-IR (11-7a)                                                                    6 Aug 02

MEMORANDUM FOR Professor Dan Wiener, II, Army Reserve Chief Information Officer, Office of the Chief, Army Reserve, ATTN: DAAR-CI, 2400 Army Pentagon, Washington, DC, 20310-2400

SUBJECT: Follow-up Audit of Cellular Telephones at OCAR, Army Reserve IR Report 24-00, (Report No. 2002-21)

1. **Executive Summary.** Corrective actions for the three recommendations contained in the Army Reserve Internal Review (IR) Report (enclosed) have not been implemented.

2. **Background.** The follow-up audit was conducted in accordance with ARs 11-7 and 36-2. The objective of the follow-up was to determine whether the OCAR CIO telecommunications personnel took adequate corrective actions to implement the recommendations contained in IR Report 24-00: Review of Cellular Telephones at OCAR, dated 18 Feb 00. The OCAR CIO telecommunications personnel provided the status of corrective actions initiated. However, the actions initiated were not adequate to close the recommendations.

3. **Scope and Method of Review.** We obtained documentation to support the status of the recommendations and conducted interviews with appropriate CIO personnel. The follow-up audit was conducted during the period 1-3 May 02 and 17-20 Jun 02; and periodic work at OCAR and HQ, USARC through 1 Aug 02. We performed this follow-up audit in accordance with generally accepted government auditing standards.

4. **Status of Recommendations and Follow-up Results.**

**Finding.** No policy regarding cellular telephones at OCAR; however, OCAR has Administrative Memorandum No. 25-98-1, "Use of OCAR Communications Resources," 19 Nov 97.

**Recommendation 1.** Determine and grant authority within OCAR to establish policy regarding cellular telephones.

**OCAR CIO Comments:** Concur with finding and recommendation.

**Follow-up Results.** Not Implemented. There is no established policy for cellular telephone at OCAR. Responsible OCAR CIO personnel could not explain why they have not established a cellular telephone policy.

DAAR-IR
SUBJECT: Follow-up Audit of Cellular Telephones at OCAR, Army Reserve IR Report 24-00, (Report No. 2002-21)

**Finding.** There is a lack of documentation to determine whether cellular telephones were appropriately justified and issued to personnel to fulfill mission requirements.

**Recommendation 2.** Finalize, publish, and implement policy guidance regarding cellular telephones within OCAR, to include the following guidance contained in the new AR 25-1:

- Are criteria established for justifying and approving the acquisition of cellular telephones?
- Has guidance been provided to review and revalidate the need for cellular telephones every two years?
- Are there procedures to identify and turn-in cellular telephones that are no longer needed or seldom used?
- Has guidance been provided to review and certify itemized monthly cellular telephones bills?

**OCAR CIO Comments:** Concur with finding and recommendation.

**Follow-up Results.** Not Implemented. See Follow-up Results for Recommendation 1.

**Finding.** Internal controls were not effective, as follows:
- Three cellular telephones were not properly hand-receipted.
- Effective reviews were not performed of itemized cellular telephone bills to validate usage of cellular telephones.
- One cellular telephone was missing.

**Recommendation 3.** Implement internal controls over the issue and accountability of cellular telephones, to include:
- Ensuring all cellular telephones are properly hand-receipted.
- Appropriate, written justifications are maintained with hand-receipts.
- Perform reviews of usage patterns of cellular telephones, based on itemized monthly bills, to identify possible unauthorized use.

**OCAR CIO Comments:** Concur with finding and recommendation.

**Follow-up Results.** Not Implemented. Cellular telephones are not properly hand-receipted. For example, a review of hand receipts showed that in one staff directorate an individual had a cellular telephone. However, when this issue was discussed with the individual, she stated a cellular telephone had never been issued to her. Responsible CIO personnel could not explain the discrepancy. Also, appropriate justifications were not always maintained with the hand receipts. Finally, responsible CIO stated they have created a "watch list" to track usage pattern but not abuse.

DAAR-IR
SUBJECT: Follow-up Audit of Cellular Telephones at OCAR, Army Reserve IR Report 24-00, (Report No. 2002-21)

5. Please review the information in this memorandum report and provide written comments to our office by 6 Sep 02. [RSC exempt, AR 335-15, para 5-2e(7)]. Please provide corrective actions taken or planned, and target dates for implementation on each recommendation. In order to ensure we provide value-added services to our customers, we request you complete the enclosed customer satisfaction survey and mail it directly to the undersigned.

6. We appreciate the courtesies extended to the auditor during the audit. If you have any questions or desire additional information concerning this report, please call Ms. Ada V. Campbell at (800) 359-8483, extension 464-8188 or (404) 464-8188; email--Campbell @ usarc-emh2.army.mil.

Encl

FRANK J. BONO
Director, Army Reserve Internal Review
and Management Control Process

3

We administer a customer survey for all audit engagements. Would you please complete this survey and return it to the Director, Army Reserve IR&MCP.

The survey is designed to provide feedback on customer satisfaction and identify opportunities for improvement.

The results of the survey are evaluated to determine whether any corrective action is required to increase the effectiveness of future audit engagements and to aid in the continuous improvement of our services.

Please complete and return this survey in the attached self-addressed envelope.

Service Provided:  Follow-up Audit of Cellular Telephones at OCAR, Report No. 2002-21

**Position:**

- [ ] Commander
- [ ] Deputy Commander
- [ ] Chief of Staff
- [ ] CXO
- [ ] Staff Director/Deputy
- [ ] Other _____

---

Please indicate your agreement with each of the following statements by circling the appropriate number to the right of each statement.  If you have any specific comments on these subjects, please include in space provided below.

| Strongly Agree | Agree | Neutral | Disagree | Strongly Disagree | Not Applicable |
|:---:|:---:|:---:|:---:|:---:|:---:|
| 5 | 4 | 3 | 2 | 1 | N/A |

**IR services were:**

1. The audit objectives were clearly communicated and I was given the opportunity to have input to the audit.  [5  4  3  2  1 ]

2. The auditor(s):

   a. Communicated effectively throughout the review.  [5  4  3  2  1 ]

   b. Had good knowledge of the task.  [5  4  3  2  1 ]

   c. Were courteous, professional and displayed a positive attitude throughout the audit.  [5  4  3  2  1 ]

3. This audit was completed in an acceptable time.  [5  4  3  2  1 ]

4. Audit results were clearly, objectively and adequately reported.  [5  4  3  2  1 ]

5. Audit recommendations were constructive and effective.  [5  4  3  2  1 ]

6. The review was beneficial to my area.  [5  4  3  2  1 ]

7. Will you request Internal Review services in the future.  [5  4  3  2  1 ]

8. Did the auditors include me and/or my staff in the process, e.g. in establishing objectives and making recommendations that will correct the problems identified.  [5  4  3  2  1 ]

Comments: _____

_____

_____

DAAR-CI

24 February 2003

MEMORANDUM FOR Director, Army Reserve Internal Review and Management Control Process

SUBJECT: Response to Follow-up Audit of Cellular Telephones at OCAR, Army Reserve IR Report 24-00 (Report No. 2002-21)

1. The following information is provided in response to your memorandum dated 6 August 2002, subject: Follow-up Audit of Cellular Telephones at OCAR, Army Reserve IR Report 24-00 (Report No. 2002-21).

Response to Follow-up Results Recommendation 1:

The CIO of the Army Reserve formulates telecommunications and automation policy for the entire Army Reserve. Currently, there is no need for OCAR to have a separate policy. The Army Reserve Command provides the telecommunications and automation support for the OCAR staff. The OCAR staff does not receive its telecommunications and automation support from the Chief of Staff of the Army (HQDA DOIM). If the OCAR staff did receive its telecommunications and automation support from the HQDA DOIM, it would be required to follow its policies. Therefore, the OCAR staff adheres to the Army Reserve Command's cellular telephone policy. A copy of the policy letter is attached.

Response to Follow-up Results Recommendation 2:

Again, the CIO of the Army Reserve formulates telecommunications and automation policy for the entire Army Reserve. The Army Reserve Command provides the telecommunications and automation support for the OCAR staff. Therefore, the OCAR staff adheres to the Army Reserve Command's cellular telephone policy.

Response to Follow-up Results Recommendation 3:

The OCAR CIO telecommunications personnel hand-receipt cellular telephones to each directorate's Information Management Advisory Group (IMAG) representative. The IMAG representative sub-hand receipts the cellular telephones to its users. The IMAG representative is responsible for issuing, tracking and maintaining its hand receipts. The OCAR CIO staff is not adequately staffed to issue and maintain sub-hand receipts for cellular telephones down to the user level. The division chiefs determine which individuals within their respective directorates receive cellular telephones based on mission requirements. The IMAG representative issues a cellular telephone based on

division chief's directive. The OCAR's Director of Staff is the final approval authority on telecommunications and automation issues at OCAR.

The OCAR CIO is currently reviewing monthly usage patterns. All summary data received by our cellular telephone provider is currently in an Adobe PDF file, which is not a searchable/manipulative format. A contractual limitation prevents the vendor from providing the call data in a searchable/manipulative format. The summary data received is manually entered into an Excel spreadsheet that allows the OCAR CIO to quickly identify personnel who are exceeding their monthly call plan.
To determine suspected abuse from the monthly-itemized call data (approximately 500+ pages), the data needs to be in a searchable/manipulative format. If not in this searchable format, it would require a dedicated full-time position to work with the data and produce the necessary reports. Currently, the OCAR CIO staff is not adequately staffed to manually input the itemized call data.

2. If you have any questions or desire additional information concerning this report, please call LTC Arthur Spearman at (703) 601-0696 or email at arthur.spearman@ocar.army.pentagon.mil.

Encls

JAMES R. HILL III
COL, SF
Deputy Chief Information Officer



**DEPARTMENT OF THE ARMY**
HEADQUARTERS, UNITED STATES ARMY RESERVE COMMAND
1401 DESHLER STREET SW
FORT MCPHERSON, GA 30330-2000

REPLY TO
ATTENTION OF

AFRC-CIS (25)

~ 1 DEC 2000

MEMORANDUM FOR

Commanders, USARC Major Subordinate Commands and Installations
USARC Directors/Chiefs, Coordinating, Special, and Personal Staff Agencies and SGS

SUBJECT: U.S. Army Reserve Command Policy on the Use and Safeguarding of Government
Issued Cellular Telephones

1. References.

   a. AR 25-1, Chapter 6, paragraph 3, Army Information Management, 15 Feb 00.

   b. USARC Regulation 25-1, Chapter 6, paragraph, 6-8, Information Resources Management
Program, 1 Feb 97.

   c. USARC Regulation 25-10, Chapter 2, paragraph 2-7, Telecommunications Management
Program, 1 Feb 00.

   d. USARC Memorandum 25-1, Staff Officers Handbook, 1 Mar 98.

2. Applicability. This policy memorandum applies to the Headquarters, U.S. Army Reserve
Command (USARC), and all units, organizations, and installations assigned to the USARC.

3. This policy memorandum supersedes USARC memorandum, AFRC-IMO, Cellular
Telephone Policy, 8 February 1997. This memorandum, along with above listed references,
provides policy and information on the use of government issued cellular telephones. Upcoming
revisions to USARC Regulation 25-1 and 25-10 will include these policies. USARC
Memorandum 25-1 will contain those portions applicable only to USARC Headquarters staff.

4. Policy.

   a. Government owned or leased cellular telephones will be distributed for the sole purpose of
allowing the user to make mission critical telephone calls where no other means of voice
communication is available.

*Encl 1*

AFRC-CIS
SUBJECT: U.S. Army Reserve Command Policy on the Use and Safeguarding of Government
Issued Cellular Telephones

b. If reasonable access to a regular (Class A) telephone (other than wireless) is available, the
regular telephone will be used in lieu of a cellular telephone.

c. In accordance with Part 47 of the Code of Federal Regulations Section 22.925 and Federal
Communications Commission Public Notice CL-142 do not use cellular telephones on fixed
wing aircraft, rotary wing aircraft, balloons, or any other type of aircraft while airborne.

d. Cellular telephones will not be issued as a supplement to tactical and non-tactical
communications.

e. Cellular telephones are billed based on airtime use for both incoming and outgoing calls
therefore all calls must be **for official use only**, of reasonable duration, and in the best interest of
the government. Calls will be limited in length to the following standards.

(1) **Cellular telephones without prepaid blocks of time.** With the exception of absolutely
mission critical communications and personnel safety, cellular telephone calls will not exceed
ten minutes in duration. Minimize all calls whenever possible.

(2) **Cellular telephones with prepaid blocks of time.** Calls from cellular telephones that
have prepaid blocks of time contracted with the service provider are limited to the number of
minutes that are provided under the contract. Minimize all calls whenever possible and do not
exceed the prepaid block of time.

f. Cellular telephones are not secure. Classified information will not be discussed while
using a cellular telephone. If any party begins to discuss classified information, advise the party
that they cannot discuss classified information over a cellular telephone. If the party continues to
discuss classified information, end the telephone call and report the incident to your COMSEC
officer.

g. Cellular telephones will be issued using DA Form 2062, Hand Receipt/Annex Number or
authorized substitution. Recipients will be provided a copy of this memorandum and any other
applicable local policies. Recipients will sign an acknowledgment verifying that they have read
and understand this policy memorandum. Written requests and justifications will be filed with
the original hand receipt (file# 25-1x).

h. Cellular telephones, regardless of how equipped (to include hands-free kits), will not be
used to make or receive calls while driving a motorized vehicle. A cellular telephone call will not
be answered until the vehicle is stopped and it is safe to make and receive calls. Vehicles will

2

AFRC-CIS
SUBJECT:  U.S. Army Reserve Command Policy on the Use and Safeguarding of Government
Issued Cellular Telephones

not be placed in motion until a cellular telephone call has been completed.  Similarly, voice mail
will not be checked, the Internet will not be used, or other special features of cellular telephone
will not be used while a vehicle is in motion.

i.  The servicing DCSIM or Installation DOIM will review and revalidate the need for cellular
telephones at least every 2 years.

5.  Cellular telephone users will take all the necessary precautions to ensure the equipment is not
lost, stolen, or used for unofficial purposes.  If a cellular telephone is lost or stolen notify your
supporting Information Management Officer immediately to terminate services and initiate
appropriate investigation.

6.  Telephone Audit Procedures.

a.  At the USARC Headquarters a CIO ISS Telecommunications Division representative will
validate the bills for payment by the CIO Financial Management Office.  Copies of the bill will
be sent to the individual cellular telephone holder to verify that calls are official.  Copies of
verification will be maintained in the CIO ISS Telecommunications Division in accordance with
AR 25-400-2, Modern Army Recordkeeping System (MARKS), file number 25-1x,
Communications Accounts.

b.  RSC, DRC, and installation DOIMs will establish similar procedures for their commands.

7.  Procedures for requesting a cellular telephone.

a.  Requests for cellular telephones will be submitted through the supporting RSC, DRC, or
installation DOIM, as appropriate, for review and approval.  Include a justification statement as
to why the cellular telephone(s) is or are required.

b.  HQ USARC staff members who wish to have a cellular telephone will use the enclosed
Cellular Phone Request form (AFRC Form 87-R (Test)).  All staff member requests will be
submitted through their staff principal for review and approval.  Forward the completed form to
the Telecommunications Division, USAR CIO ISS, ATTN: AFRC-CIS-NT for approval and
procurement.

c.  The test period for AFRC Form 87-R (Test) will expire when the final version is published
in a revision to USARC Memorandum 25-1.  The form can be found on the HQ LAN in
Formflow format at: "\\usarcshared\readonly\\forms\afrc\afrc87r.frl" and is for HQ staff use only.

3

AFRC-CIS
SUBJECT: U.S. Army Reserve Command Policy on the Use and Safeguarding of Government Issued Cellular Telephones

8. This policy memorandum is punitive in nature. Violation of this policy memorandum could result in any or all of the following sanctions: loss of use or limitations on use of cellular telephones, disciplinary or adverse actions, criminal penalties, and employee being held financially liable for the cost of unauthorized use.

9. For further information regarding this policy contact LTC Nathan Ennis, Chief, Telecommunications Division at 404-464-9385 or the USAR CIO ISS Plans and Integration Division at (404) 464-9374, e-mail: RamosJr@usarc-emh2.army.mil.

Encl
           THOMAS C. MAIELLO, JR.
           Colonel, GS
           Army Reserve Chief Information Officer

CF:
CDR, ARPERSCOM, ATTN: AFRC-CIP, 1 Reserve Way, St. Louis, MO 63132-5200
OCAR CIO, 1421 Jefferson Davis Highway, Suite 11100, Arlington, VA 22202-3259

4

**OFFICE OF THE CHIEF, ARMY RESERVE**
**1421 JEFFERSON DAVIS HIGHWAY**
**ARLINGTON, VIRGINIA 22202-3259**



ADMINISTRATIVE MEMORANDUM No.                        19
November 1997

No. 25-98-1


Information Management

USE OF OCAR COMMUNICATIONS RESOURCES


1. This Administrative Memorandum supersedes OCAR Administrative Memorandum No. 25-96-08, 26 April 1996, Subject: Telecommunications Equipment Usage.

2. PURPOSE: This memorandum establishes policy, procedures and responsibilities for the use of communications resources within the Office, Chief Army Reserve (OCAR). The purpose of this policy is to safeguard OCAR data and resources and reduce unnecessary risks to OCAR managed communications resources arising from abuse and misuse of these resources.

3. REFERENCES:

    a. DoD 5500.7-R (Joint Ethics Regulation), 30 August 1993 (w/Change 2, 25 March 96), Para 2-301.

    b. AR 25-1, 25 March 1997, Subject: The Army Information Resources Management Program.

    c. DA Pam 25-1-1, 27 August 1991, Subject: Installation Information Services.

4. POLICY: OCAR communications resources are for Official Use and Authorized Personal Use only. The following policy for use of OCAR communications resources is established for all OCAR employees:

    a. OCAR communications resources include electronic, electromagnetic, and optic light signals used to transmit or receive information between two or more points by means of owned/leased radio, wire, cable, satellite, fiber optics, or other electronic media and the devices which provide this capability. These devices include telephone; cellular phone; pager; non-tactical radio; facsimile; personal computer using modem, switch, router, and/or any other component of systems supplying transmission services (e.g., local area network, Internet, electronic-mail, etc.).

*Encl 2*

b. "Official Use" includes all communications that are necessary in the interest of the Federal Government.

c. "Authorized Personal Use" includes communications that are most reasonably made from a normal work place. Examples include checking in with spouse or children; making medical, automobile repair, and similar appointments; making brief Internet searches; e-mailing directions to visiting relatives; and making electronic bank or other financial transactions; and brief communications by a Government employee in an official travel status to appropriate individuals, to notify them of schedule changes. Personal use is authorized when it:

(1) Does not adversely affect the performance of official duties by the employee or the organization.

(2) Is of reasonable duration and frequency and, whenever practicable, made during the employee's personal time, such as before or after duty hours or during a meal or other break period.

(3) Serves a legitimate public interest such as keeping employees at their desks, furthering their education, enhancing technical or professional skills, or assisting in job searches in response to downsizing.

(4) Does not involve illegal activities, uses contrary to Government regulations, uses that would reflect adversely on OCAR or the Department of Defense or any other use incompatible with public service.

(5) Does not overburden any Government communications or computer system.

(6) Does not create significant additional cost to the Government. No toll or other usage fee may be charged to the Government, even if the individual intends to reimburse the Government for such use. Toll-free numbers may be used. For communications requiring tolls or fees, charges must be reversed, made against a personal credit or debit card, pre-paid calling card, or other personal calling card billed to the user.

d. Supervisors must monitor employee use of communications resources to ensure that policy guidance is followed. Supervisors may further restrict or revoke authorized personal use of Government communications resources, for any perceived misuse of resources.

e. The OCAR Local Area Network (LAN). As a Government communications resource the LAN is subject to the same restrictions as other media. Due to the nature of the electronic mail feature of the LAN some additional examples of restrictions, as well as an authorized capability, are provided below.

(1) Users are restricted from sending chain letters, group e-mailings to offer items for sale or for other personal purposes, harassing another person by sending or displaying uninvited e-mail of a personal nature, using lewd or offensive language in an e-mail message, or using another person's account or identity without permission.

(2) An "Unofficial Bulletin Board" has been established for the use of all OCAR personnel. This bulletin board may be used to post items for sale, announce social events, etc. It may not be used for solicitation of business or

engaging in other activities in support of private business enterprises; partisan political or religious activity; or lobbying, advocacy, or fundraising activities on behalf of any organization. Questions concerning proper use may be forwarded to the Information System Security Manager ISS0).

f. The Internet. This immense resource for information interchange and communications poses special hazards and potential for abuse of Government resources. Authorization is granted to use OCAR communications resources to access the Internet for both official and personal use as follows:

(1) Official use includes official communications, research, or professional development/education, as long as this access relates to the mission of the DoD.

(2) Authorized personal use is under the restrictions stated in paragraph 3c above. Some examples of authorized personal use include sending and receiving brief personal e-mail messages to family, friends, and co-workers when such communications are most reasonably made during working hours and do not affect productivity or interfere with Government operations in any way, conducting Internet searches, or viewing Internet news services.

g. Restrictions specifically applicable to the Internet include the following:

(1) Participation in "chat lines" or other forum discussions for other than official business.

(2) Accessing "Hacker" sites and/or downloading "hacking" tools, unless the user is specifically authorized to do so as part of the users official duties.

(3) Interfering with the functioning of any system or with any other person's use of a system by the number or frequency of e-mail messages ("spamming'").

(4) Using another person's account or identity without permission, for example, by forging e-mail.

(5) Viewing, damaging, or deleting files or communications belonging to another person without permission.

(6) Uploading information onto or altering a web site owned by another person or organization without permission of the web site' s owner.

(7) Attempting to circumvent or defeat any security or auditing system without prior authorization and other than as part of legitimate system testing or security research.

(8) Obtaining, installing, storing, or using software in violation of any patent, copyright, trade secret, or license agreement.

(9) Storing or transmitting any copyrighted materials (including illustrations) without permission of the copyright owner.

(10) Permitting any unauthorized person to access a DoD owned system.

h.  Downloading Materials from the Interact. Any downloaded material, from any source, must be scanned using anti-virus software before it is opened or executed.  This includes sound and video files, as well as files transmitted via e-mail.  Compressed files should be scanned again after being decompressed.  No download files will be loaded or installed directly to a network or shared drive without permission of the ISSO.

i.  Use of Government communication resources is with the understanding that:

(1)  Use of such resources serves as consent to monitoring of any type of use, including personal uses whether authorized or unauthorized.

(2)  Use of such resources is not anonymous.  For each use of the OCAR LAN and Interact, the name and computer address of the user can be recorded, as well as the locations accessed by the user.  Interact access via DoD networks are monitored 24 hours a day, seven days a week and any Internet session may be monitored in its entirety.

(3)  Employees will not disclose communications system access data (such as passwords) to anyone, unless such disclosure is authorized.

(4)  Employees must use sound judgment when considering the use of e-mail for the transmission of sensitive information or other valued data. Information transmitted over an open network, such as LAN e-mail, the Internet, telephone or fax, is accessible to anyone else on the network.  Information transmitted through the Interact or by e-mail is accessible to anyone in the chain of delivery, and may be re-sent to others by anyone in the chain.

5.  The proponent for this policy is the Information Management Division.


MAX BARATZ
Major General, USA
Chief, Army Reserve


OFFICIAL:


//S//
NORMAN P. GOTTLIEB
COL, GS
Executive Officer


DISTRIBUTION:
All Division/Offices (OCAR/ARSC)

## Acceptable Use Agreement
## For
## Office Chief Army Reserve Wireless Telecommunication Systems

This document provides guidelines for the use of OCAR Wireless Systems located at or operated by Office Chief, Army Reserve personnel. These are minimum guidelines for use and do not exempt users from further restrictions that may be imposed by this Command. The scope of this document includes all telecommunication devices, to include but not limited to, OCAR cell phones, pagers, Blackberry/RIM two-way messaging handhelds, personal digital assistants (PDA), and Secure Telephone Units (STUs) or the Secure Terminal Equipment (STE). The purpose of the below guidelines are to ensure that all users operate telecommunication devices systems in an effective, efficient, ethical, and lawful manner.

The "user" is an OCAR employee requesting issued wireless devices in order to perform work in support of OCAR or a project authorized for OCAR and includes civilian, military, and contract employees.

OCAR wireless systems are to be used for authorized purposes only. Unauthorized use is a violation of the Uniform Code of Military Justice, Army regulations or policy, or DoD directive. Penalties include loss of use or limitations on use of equipment or services, disciplinary or adverse actions, criminal penalties, and employees being held financially liable for the cost of unauthorized use.

As a user of the Office Chief Army Reserve (OCAR) Wireless System, I acknowledge my responsibility to conform to the following requirements and conditions.

1. I understand that failure to sign and abide by this agreement could result in denial of access to OCAR-ESA.

2. I understand that I will not introduce, store, pass, or process classified data on any Wireless device issued to me by OCAR-ESA personnel.

3. I have read and understand my responsibilities and restrictions, as listed below, and agree to abide by them. I will:

> - Not use any wireless telecommunication device for any classified data.
> - Not conduct or perpetuate an illegal act while using any wireless device, nor any activity that can discredit, inhibit, impair, or disrupt the mission/s of OCAR. Prohibited conduct also includes activities that may reasonably be expected to cause embarrassment or bring discredit to the user, the Office Chief Army Reserve, or U.S. Government.
> - Limit use of the wireless device for unclassified, official government business, and those authorized purposes as set forth in DOD 5500.7-R. Government access to WWW sites with BlackBerry devices is permitted to obtain professional literature that is job related; acquiring public domain information of value to the organization; to send official U.S. Government E-mail; to correspond with learning institutions for job-related continuing education purposes; and for other official government business.
> - Immediately report to my IA Representative any known or suspected intrusions or violations of the security policies.
> - Inform the supporting Automation Help Desk whenever a wireless device appears to be malfunctioning or is lost or stolen. Users will take all the necessary precautions to ensure the equipment is not lost, stolen, or used for unofficial purposes.
> - Contact the IA Representative prior to departing or after changing organizations to ensure appropriate transfer of any and all telecommunication devices.
> - Government owned or leased cellular telephones are distributed for the sole purpose of allowing the user to make mission critical telephone calls, when no other means of voice communication is available.
> - Army policy permits communications monitoring or recording provided that the information to be acquired is necessary for the accomplishment of the Army mission.

*Encl 3*

- ➢ Cellular telephones will not be used in lieu of established "wired" telecommunications network.
- ➢ Commercial cellular phones, alleged to be secure are **not** authorized for classified or sensitive communications.
- ➢ Per the Decision of the U.S. Comptroller General B-217996, 65 Comptroller General 19 (October 21, 1985) provides authorization to verify cellular telephone bills by use of statistical sampling and analysis to determine call are official in nature for the purpose of collecting payment for all unofficial calls. (AR-25-1, 6-3 paragraph f(1))
- ➢ Cellular telephones, regardless of how equipped (to include hands- free kits), will not be used to make or receive calls while driving a motorized vehicle. A cellular telephone will not be answered until the vehicle is stopped and it is safe to make and receive calls.

4. I understand that all OCAR telecommunications and automated information systems are subject to monitoring for the purpose of ensuring proper functioning, to detect and protect against improper, unauthorized, or illegal use or access, to verify the presence or performance of applicable security features or procedures, and for like purposes. Such monitoring may be done by System Administrators, system security officers, or law enforcement personnel, and may result in the acquisition, recording, and analysis of all data being communicated, transmitted, processed or stored in this system by a user. If monitoring reveals possible evidence of criminal activity, such evidence may be transferred to or collected by law enforcement personnel. I understand that my use of the system, authorized or unauthorized, constitutes my consent to such monitoring, whether such monitoring was initiated or requested by Systems Administrators, system security officers, or law enforcement personnel. I also understand that my use of the system, authorized or unauthorized, constitutes my consent to any resulting acquisition, recording, analysis, transfer, or collection of data or evidence, whether such acquisition, recording, analysis, transfer, or collection of data or evidence was initiated or requested by Systems Administrators, system security officers, or law enforcement personnel.

5. I acknowledge my responsibility to notify my Information Assurance Security Officer in the event that I change offices, leave the OCAR, or no longer require access to wireless telecommunication equipment.

6. I acknowledge my responsibility to conform to the requirements set forth in this agreement and acknowledge that I will abide by all applicable policies. I also understand that failure to comply may result in denial of access to OCAR networks or AIS, and that, if necessary, such violations will be reported to the proper authorities.

- ➢ Your Information Assurance Security Officer is: MSG Farris Allread        Phone: 703-601-0805

- ➢ Your Information Assurance Manager is: MAJ Jerome Davis        Phone: 703-601-0808

- ➢ Your Telecommunication Systems Analyst is Mr. Art Berstis        Phone: 703-601-0666

I hereby acknowledge that I have read and will abide by this **Acceptable Use Agreement For Office Chief Army Reserve Wireless Telecommunication Systems**

User's Printed Name:                                      Phone Number:

Organization/Section :

User's
Signature_____Date:

**Campbell, Ada V Ms USAR IR**

| | |
|---|---|
| **From:** | Devine, Dawn MAJ (OCAR-ZD) |
| **Sent:** | Monday, March 15, 2004 3:14 PM |
| **To:** | Campbell, Ada V Ms USAR IR |
| **Subject:** | FW: Scanned documents |



Scanned_.pdf (150
KB)

Ms. Campbell, attached is the response to our Second follow-up audit of cellular
telephones at OCAR (IR Engagement No. 2003-090)>  Please let me know if you need the
original sent to you.

v/r
MAJ Dawn DeVine
Telephone Control Officer
Office of the Chief, Army Reserve
703-601-0913

1

DAAR-ZD


MEMORANDUM FOR Commander, US Army Reserve Command (DAAR-IR), 1401 Deshler Street, SW, Fort McPherson, GA 30330-2000

SUBJECT: Second Follow-up of Audit of Cellular Telephones at OCAR (IR Engagement No. 2003-090), dtd 12 Feb 04.


1. Purpose. This memorandum provides description of corrective actions taken or planned, and target dates for implementation on each recommendation to the above referenced audit.

2. General. OCAR has appointed a Telephone Control Officer (TCO) as of 23 Feb 04 to assist in conducting corrective actions, implement audit recommendations and provide checks and balances to eliminate future discrepancies. A mandatory class is being developed to review/update hand receipts, sign usage agreements and discuss red flags and procedures for reimbursement of unauthorized calls. The class will be completed by the end of March 2004.

3. Background. The following three audit recommendations will be addressed as follows:

   **a. Monthly cell phone bill review by TCO to determine employees exceeding their monthly cell plans and potential unauthorized use.**

      (1) *Corrective action planned/taken*: Interim assistance is being provided by the OCAR Telecommunication Systems Analyst by conducting red flag reviews, **as necessary** (outlined in AR 25-1, Chp 6-3). Currently this duty is not included in the ESA contract and therefore can only be conducted when manpower is available, at a minimum, once per quarter. **Delegating that authority to Directors will be recommended.**

         (a) Red Flags have been established as:

            • Calls exceeding 10 minutes

            • Total monthly minutes exceeding monthly billing plan

            • Calls made to 1-900 numbers

DAAR-ZD
SUBJECT: Second Follow-up of Audit of Cellular Telephones at OCAR (IR
Engagement No. 2003-090), dtd 12 Feb 04.

      (b) Manpower staff study to be forwarded to CofS outlining justification
of relevant duties to support a TCO NCOIC.

      (c) Certification for TCO pending training availability.

    (2) <u>Target date for implementation</u>:  Immediately.  ESA will conduct initial
review, for 2nd quarter (Jan-Mar 04) and report findings to the TCO NLT    1 Apr
04.  Provide Directorate Chiefs with a monthly PDF file starting 1 May 04 to
assist in conducting detailed reviews of systems assigned.  Status report format
to be disseminated within directorate guidance outlined below.  Reports will be
managed by suspense and reviewed by the TCO.

  **b. Provide monthly cellular telephone bills to employees for use
certification.**

    (1) <u>Corrective action planned</u>.

      (a) Provide monthly cellular telephone bills (PDF file) to **Directorates,**
or authorized representatives for use certification.  Breakout for each individual
can be requested on a case by case basis or as necessary per AR 25-1,
Chp 6-3.

      (b) Develop Directorate Guidance outlining supervisory responsibilities
of all cell phone or blackberry users under their authority.
- Accountability
- Hand Receipt Updates
- Review of Quarterly Usage
- Submission of status reports
- Procedures for reimbursement of unauthorized calls
- Suspension of privileges
- Change in usage plans
- Change in requirements (increase/decrease)

      (c) Require all Directorates to provide justification for each assigned
cell phone or blackberry wireless systems by position.  Include low, med or high
usage requirements.  Recommendations for increased or decreased assigned
systems will be included by position.  Sample template to be developed and
distributed in staff guidance.

      (d) Require all cell phone users to attend usage training when 
scheduled and comply with all requirements outlined above.

2

DAAR-ZD
SUBJECT: Second Follow-up of Audit of Cellular Telephones at OCAR (IR Engagement No. 2003-090), dtd 12 Feb 04.

   (2) Target date for implementation: NLT 1 Apr 04.

   c. If unauthorized calls are found, initiate appropriate actions to have the employee reimburse the government for each unauthorized call.

   (1) Corrective action planned. Develop procedures for implementation and collection. Include procedures in Directorate guidance and OCAR policy.

   (2) Target date for implementation. NLT 1 Apr 04.

4. The POC for this memorandum is MAJ DeVine, 703-601-0913.

                                    BRUCE M. PARKER
                                    LTC, GS
                                    Director of Staff Management

3

**Follow-up - USAAA Audit of Causes for Financial Discrepancies, Report No. 2003-089.** Our objective was to determine if stated corrective actions to recommendations contained in the USAAA Audit of "Causes for Financial Discrepancies," [SARSS], USAAA Report No. A-2002-0260-AML, 29 Mar 02, were implemented and if actions taken eliminated problems identified in the report. We concluded the USARC DCS, G-4 implemented the corrective actions and effectively corrected reported problems identified in the subject USAAA audit report.

**Second Follow-up - Cellular Telephones at OCAR, Report No. 2003-090.** Our objective was to determine whether Enterprise Services Activity (ESA) took corrective action to implement the one open recommendation contained in our First Follow-up Report No. 2002-021, dated 6 Aug 03. We concluded corrective actions have not been implemented. Because of the problems identified during this follow-up audit, we made three additional recommendations. We will follow-up to determine if the additional recommendations have implemented during our planned Audit of Cellular Telephones in CY 04. The OCAR Director of Staff Management agreed with our recommendations.

**Follow-up - Financial Management Practices for the Readiness Training (REDTRAIN) Program, Report No. 2003-091.** Our objective was to determine whether the Southeastern Army Reserve Intelligence Support Center (SE ARISC) took adequate corrective action to implement the one open recommendation contained in our Follow-up Report No. 2002-14, dated 24 July 02. We concluded adequate corrective action was taken to fully implement the one recommendation.

**Follow-up - ESA Contract Acquisition Management, Report No. 2003-092.** Our objective was to determine whether the ESA took corrective action to implement the one open recommendation contained in our Follow-up Report No. 2003-08, dated 24 Apr 03. We concluded adequate corrective action was taken to fully implement the recommendation.

**Equipment Readiness, 77th RRC, Report No. 2003-023, 63d RRC, Report No. 2003-058, 88th RRC, Report No. 2003-078.** The objective of the audit was to determine whether guidance and controls were in place, followed by RRCs, to ensure equipment readiness met reporting standards in accordance with Army Regulation 700-138 during FY 03 in the Army Materiel Status System (AMSS). We visited three RRCs and found equipment readiness needed improvement. Specifically, the RRCs need better controls to ensure: (i) leadership at all levels place more effective emphasis on maintaining and reporting equipment readiness, (ii) Maintenance Officers and Technicians, Unit Level Logistic System-Ground Operators, and Property Book Officers properly track and reconcile the reportable items' records to accurately reflect AMSS reporting and, (iii) equipment receives timely scheduled maintenance services and Preventive Maintenance Checks and Services. The three RRCs Commanders agreed with our three recommendations and were taking corrective actions during the audit.