# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

**WILLIAM TODD LEE,**

    **Plaintiff,**

       **v.**

**PETE GEREN**[*]
**Acting Secretary of the Army,**

    **Defendant.**

**Civil Action No.  06-884 (JDB)**

---

## MEMORANDUM OPINION

Plaintiff Colonel (ret.) William Todd Lee ("Colonel Lee") brings this action against defendant Pete Geren, Acting Secretary of the Army ("Army"), alleging that the Army has failed to maintain his records with the level of accuracy required by the Privacy Act, 5 U.S.C. § 552a (2000).  He now seeks the amendment of his records and an award of damages for an adverse determination allegedly caused by the Army's reliance on those records.  The Court views this lawsuit as an attempt to challenge a minor personnel action that would not otherwise be susceptible to judicial, or even administrative, review.  For the reasons stated in this Memorandum Opinion, the Court grants defendant's motion to dismiss or in the alternative for summary judgment.

## BACKGROUND

---

[*]The original defendant in this action, Francis J. Harvey, was replaced as Secretary of the Army by Pete Geren on March 9, 2007.  Geren is automatically substituted as defendant pursuant to Fed. R. Civ. P. 25(d)(1).

In December 2003, the Army instituted an investigation into allegations that plaintiff had committed misconduct during the course of his duties as a civilian Army employee. Compl. ¶ 27. In accordance with Army regulations, an investigating officer was appointed to conduct the investigation and document her findings and recommendations in a Form 1574 Report of Proceedings, otherwise referred to as a Report of Investigation ("ROI"). Id. ¶ 28. The officer investigating Colonel Lee issued an ROI on February 25, 2004, in which she found by a preponderance of the evidence that plaintiff had, among other things, falsified the resume he submitted to obtain his position as a civilian employee at the GS-15 grade level and misused his government-issued cell phone. Id. ¶ 29.

On March 16, 2004, Brigadier General James Kelley issued a notice proposing the termination of plaintiff's employment ("March 16 notice"). Id. ¶ 30. In that notice, BG Kelley cited plaintiff's resume falsification and misuse of government property as the reasons for the proposed termination. Id. ¶ 31. The notice also informed plaintiff that he had the right to file a reply and supporting evidence in his defense. AR 533. After plaintiff requested an extension of time to file his reply, BG Kelley withdrew the March 16 notice and replaced it with a second, essentially identical notice of proposed removal dated March 29, 2004 ("March 29 notice"). Compl. ¶ 32.

Plaintiff filed his administrative reply along with fifteen exhibits on April 13, 2004. Id. ¶¶ 35, 36. A week later, BG Kelley issued his decision ("notice of decision"). Id. ¶¶ 37, 38. The notice of decision stated that BG Kelley, after reviewing the facts and circumstances of plaintiff's case, including plaintiff's reply, determined that two charges of misconduct (resume falsification and misuse of government property) were supported by a preponderance of the evidence. Id.

-2-

¶ 37; AR 595.  BG Kelley decided, however, that these findings did not warrant plaintiff's

removal from service.  Compl. ¶ 37.  Instead, BG Kelley proposed a fourteen-day suspension

without pay and notified plaintiff that a Standard Form 50 documenting the suspension would be

filed in his personnel folder.  Id. ¶ 38.  A Standard Form 50 was later issued that indicates

plaintiff was suspended from May 2 to May 15, 2004, and lists "[f]alsification of information in

your job application and misuse of Government resources" as the "[r]eason for suspension."  AR

597.

      The notice of decision had also informed plaintiff that he had the right to request review

of the decision under the Department of Defense Administrative Grievance System.  AR 595.

There is no indication that plaintiff filed such a grievance.  Plaintiff did, however, institute an

administrative complaint alleging that his suspension constituted age, race, sex, and disability

discrimination.  Pl.'s Opp'n to Def.'s Mot. to Dismiss/Mot. for Summ. J. ("Pl.'s Opp'n") at 7-8;

AR 698-704.  That complaint was dismissed in March 2005.  Pl.'s Opp'n at 7; AR 725.  Plaintiff

then filed a Privacy Act amendment request with the Army on September 15, 2005.  AR 728.

The request asked for the following amendments to Colonel Lee's records:

> 1) the AR 15-6 Report of Investigation ("ROI") be amended to show that the
> allegations addressed here were unsubstantiated; 2) the proposed termination of COL
> Lee's employment, issued by MG Kelley, be amended to show that such action was
> not taken; 3) the notice of suspension of employment be amended to show that such
> action was not taken; 4) the standard Form 50 reflecting his 14-day suspension of
> employment and the reasons therefore be amended to show that such action did not
> occur; and 5) any and all other documents associated with or generated by the AR 15-
> 6 investigation be amended to show that the allegations were unsubstantiated.

Compl. ¶ 47.  Plaintiff submitted three affidavits with his amendment request that he argued

demonstrated the inaccuracy of BG Kelley's finding that he had falsified his resume.  Id. ¶¶ 40-

43; see AR 735-38 (describing affidavits).  The Army denied plaintiff's amendment request on

February 14, 2006.  Compl. ¶ 49.

      This civil action followed.  Plaintiff has renewed his amendment request in its entirety.

Id. Prayer for Relief ¶ a.  In addition, he requests unspecified damages and other equitable relief

resulting from adverse determinations that were allegedly taken against him based on his

allegedly inaccurate records.  Id. ¶¶ 56-57, Prayer for Relief ¶¶ b, c.  Defendant has moved to

dismiss the complaint for failure to state a claim, and alternatively asks for summary judgment.

## STANDARD OF REVIEW

      A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

will not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in

support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46

(1957); see also Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C. Cir. 1987).  All that the

Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain

statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and

the grounds upon which it rests."  Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 346

(2005) (quoting Conley, 355 U.S. at 47).  "Given the Federal Rules' simplified standard for

pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted

under any set of facts that could be proved consistent with the allegations.'"  Swierkiewicz v.

Sorema N.A., 534 U.S. 506, 514 (2002) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73

(1984)).

      Under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should

be liberally construed in his or her favor.  Leatherman v. Tarrant County Narcotics &

Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979). The plaintiff must be given every favorable inference that may be drawn from the allegations of fact. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). However, "the court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." Kowal v. MCI Commc'n Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994); see also Domen v. Nat'l Rehab. Hosp., 925 F. Supp. 830, 837 (D.D.C. 1996) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. (quoting Fed. R. Civ. P. 56(c)).

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the

"mere existence of a scintilla of evidence" in support of its position.  Id. at 252.  By pointing to

the absence of evidence proffered by the non-moving party, a moving party may succeed on

summary judgment.  Celotex, 477 U.S. at 322.  "If the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50

(citations omitted).  Summary judgment is appropriate if the non-movant fails to offer "evidence

on which the jury could reasonably find for the [non-movant]."  Id. at 252.

## ANALYSIS

The Privacy Act "regulate[s] the collection, maintenance, use, and dissemination of

information" about individuals by federal agencies.  Privacy Act of 1974, Pub. L. No. 93-579,

§ 2(a)(5), 88 Stat. 1896, 1896.  "The Act gives agencies detailed instructions for managing their

records and provides for various sorts of civil relief to individuals aggrieved by failures on the

Government's part to comply with the requirements."  Doe v. Chao, 540 U.S. 614, 618 (2004).

Plaintiff's suit involves provisions of the Act governing the accuracy of agency records.

The Privacy Act requires agencies to "maintain all records which are used by the agency in

making any determination about any individual with such accuracy, relevance, timeliness, and

completeness as is reasonably necessary to assure fairness to the individual in the determination."

§ 552a(e)(5).  The Act also ensures that an individual can access his or her records and request

amendment of those records to correct any perceived inaccuracies.  § 552a(d)(1)-(3).  A civil

action is available to correct an inaccurate record that the agency has refused to amend.

§ 552a(g)(1)(A).  An individual may also bring a civil suit based on an adverse determination

made as a result of an inaccurate record.  § 552a(g)(1)(C).  This Memorandum Opinion refers to

the former type of action as an "amendment claim" and to the latter type as an "adverse-

determination claim."

## I.    The Privacy Act and the Civil Service Reform Act

The Army argues that plaintiff's Privacy Act claims are simply collateral attacks on agency judgments and minor adverse personnel actions that are within the exclusive purview of the Civil Service Reform Act of 1978 ("CSRA"), Pub. L. No. 95-454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.).  Because the parties have framed this as a threshold issue, the Court will address it first.

In the words of the Supreme Court, "the CSRA comprehensively overhauled the civil service system, creating an elaborate new framework for evaluating adverse personnel actions against federal employees."  United States v. Fausto, 484 U.S. 439, 443 (1988) (citation, alterations, and internal quotation marks omitted).  The Act "replace[d] the haphazard arrangements for administrative and judicial review of personnel action" that preceded its enactment, id. at 444, with "an integrated scheme . . . designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration," id. at 445.  Under this comprehensive scheme, both administrative and judicial review is available for major personnel actions (including suspensions of more than fourteen days) and "specified minor personnel actions infected by particularly heinous motivations or disregard of law ('prohibited personnel practices')."  Carducci v. Regan, 714 F.2d 171, 175 (D.C. Cir. 1983); see also 5 U.S.C. § 1214 (2000) (providing for administrative and judicial review of prohibited personnel practices); id. § 2302 (defining prohibited personnel practice); id. § 7512 (listing major adverse actions, including suspensions of more than fourteen days); id. § 7513 (providing right to appeal major adverse action to Merit Systems Protection Board ("MSPB"));

-7-

id. § 7703 (allowing judicial review of MSPB decisions).

For suspensions of fourteen days or less, however, there is no opportunity for either administrative or judicial review. The CSRA clearly does not provide for it. See Fausto, 484 U.S. at 450; Carducci, 714 F.2d at 175. Instead, the Act offers employees only procedural protections: a suspended employee is entitled to advance notice of the action along with the reasons thereof, a chance to file a written response with documentary evidence, representation by an attorney, and a final written decision. 5 U.S.C. § 7503 (2000). Additionally, an employee may file a grievance through an agency grievance system, if one is available. 5 C.F.R. § 752.203(f) (2006). The CSRA's intentional withholding of judicial review for certain personnel actions has been found to preclude an employee from obtaining judicial review through other, pre-existing legal avenues. See Fausto, 484 U.S. at 455 (holding that employee excepted from CSRA review provisions could not seek review of thirty-day suspension under Back Pay Act); Pathak v. Dep't of Veterans Affairs, 274 F.3d 28, 31 (1st Cir. 2001) (denying review of seven-day suspension under Administrative Procedure Act and noting that "Fausto stands for the general proposition that judicial review is unavailable to a federal employee who has suffered an adverse personnel action if CSRA does not provide judicial review").

In light of the exclusive nature of the CSRA's remedies, many courts have held that the CSRA preempts actions under the Privacy Act that seek review of adverse personnel decisions. For example, it is well-established in the Ninth Circuit that the CSRA preempts subsection (g)(1)(C) Privacy Act claims when the "adverse determination" underlying the claim falls within the CSRA's definition of prohibited personnel practice. See Orsay v. U.S. Dep't of Justice, 289 F.3d 1125, 1128 (9th Cir. 2002) ("If the conduct that Appellants challenge in this action falls

within the scope of the CSRA's 'prohibited personnel practices,' then the CSRA's administrative procedures are Appellants' only remedy, and the federal courts cannot resolve Appellants' claims under the Privacy Act . . . ."); Houlihan v. Office of Pers. Mgmt., 909 F.2d 383, 384-85 (9th Cir. 1990) (per curiam) (holding that federal employee could not challenge through Privacy Act a classification decision that met CSRA definition of prohibited personnel practice); see also Toppo v. Norby, 157 Fed. App'x 990, 992 (9th Cir. 2005) (affirming dismissal of Privacy Act suit based on prohibited personnel practices). Preemption occurs even when the CSRA does not provide the employee with an alternative judicial remedy. See Orsay, 289 F.3d at 1128-29. The Ninth Circuit has observed that allowing Privacy Act claims premised on prohibited personnel actions "'would open the back door to judicial review [of] perhaps an overwhelming number of CSRA claims, thereby frustrating Congress's decision to assign to the [Office of Special Counsel] the task of policing alleged prohibited personnel practices.'" Id. at 1130 (alterations in original) (quoting Houlihan, 909 F.2d at 384-85).

Other courts have found that the CSRA preempts adverse-determination claims even more broadly. One recent case in the District of New Jersey involved a postal worker who had been suspended based on a supervisor's memorandum indicating that he smoked marijuana at work. See Finnerty v. U.S. Postal Serv., No. 03-cv-558, 2006 WL 54345, at * 1 (D.N.J. Jan. 9, 2006). He alleged that the memorandum was inaccurate and sought damages under § 552a(g)(1)(C) and (D) for the resulting suspension. Id. at *9. The court found that these causes of action were really "disguised claims for review of the USPS's determination to temporarily suspend" the plaintiff and therefore were preempted by the CSRA. Id. at *10. The CSRA has also been found to preclude a plaintiff from seeking damages under subsection

(g)(1)(C) for the denial of a promotion that was caused by an allegedly inaccurate performance evaluation.  See Barhorst v. Marsh, 765 F. Supp. 995, 999 (E.D. Mo. 1991).

Privacy Act amendment claims have suffered the same fate.  In Rogers v. U.S. Dep't of Labor, 607 F. Supp. 697 (C.D. Cal. 1985), a federal employee sought to amend records compiled during the administrative adjudication of her disability claims.  Id. at 699.  In language that has been quoted often since, the district court rejected the plaintiff's attempts to amend the adjudicative decisions:  "The Privacy Act allows for the amendment of factual or historical errors.  It is not, however, a vehicle for amending the judgments of federal officials . . . [and] may not be employed as a skeleton key for reopening consideration of unfavorable federal agency decisions."  Id.  The court also denied the plaintiff's requests to amend a physician's diagnosis and expunge a narrative describing her job performance, both of which were created for purposes of the adjudication.  Id. at 699-700.  The court relied on Office of Personnel Management ("OPM") guidelines stating that the Privacy Act's amendment provisions "'are not intended to permit the alteration of evidence presented in the course of judicial [or] quasi-judicial . . . proceedings.'"  Id. (quoting Privacy Act Implementation: Guidelines and Responsibilities, 40 Fed. Reg. 28,948, at 28,958 (July 9, 1975) ("OPM Guidelines")).  Similarly, in Henderson v. Soc. Sec. Admin., 908 F.2d 559 (10th Cir. 1990), the "plaintiffs' allegations of errors in their records essentially sought review of the Social Security Administration's reinstatement determination and therefore review of an employment decision."  Id. at 560.  The Tenth Circuit held that the CSRA precludes such review.  Id. at 560-61; cf. Pellerin v. Veterans Admin. of U.S. Gov't, 790 F.2d 1553, 1555 (11th Cir. 1986) (finding that plaintiff's amendment claim "constituted a collateral attack" upon agency's disability-benefits determinations that was precluded by review procedures

of 38 U.S.C. § 211(a)).

The D.C. Circuit, however, has taken a much narrower view of CSRA preemption in Privacy Act cases. In <u>Hubbard v. U.S. Envtl. Prot. Agency, Adm'r</u>, 809 F.2d 1 (D.C. Cir. 1986), the Court of Appeals noted the tension between the Privacy Act and the CSRA. In particular, it observed that "it would be anomalous to construe the pre-existing Privacy Act to grant the district court power to do indirectly that which Congress precluded directly," namely, to review prohibited personnel practices. <u>Id.</u> at 5. But the court went on to state that,

> [o]n the other hand, as the government concedes, the Privacy Act permits a federal job applicant to recover damages for an adverse personnel action <u>actually caused</u> by an inaccurate or incomplete record. But the obvious need to accommodate the two statutory schemes requires the district courts to analyze the asserted causation link to be certain they are not exceeding their jurisdiction.

<u>Id.</u> The court opined that the plaintiff "really allege[d] only a wrongful personnel decision" in the guise of a subsection (g)(1)(C) action. <u>Id.</u> But it held that the "bad fit between the facts asserted by Hubbard and a colorable Privacy Act claim is revealed by Hubbard's <u>failure to demonstrate the required causal link</u> between the passover document and his failure to obtain employment." <u>Id.</u> (emphasis added). In other words, the Court of Appeals reached the merits of the claim and then narrowly construed an element of that claim (causation) to avoid conflict with the CSRA.

This approach was repeated in <u>Kleiman v. Dep't of Energy</u>, 956 F.2d 335 (D.C. Cir. 1992). The plaintiff in <u>Kleiman</u> argued that his job title was listed inaccurately in personnel records because his actual work assignments corresponded to a different job title at a higher pay grade. <u>Id.</u> at 337. The Court of Appeals considered Kleiman's Privacy Act amendment claim a "collateral attack on the original [job classification] personnel decision" that, if successful, would "bypass[] the 'exhaustive remedial scheme' provided by Congress" in the CSRA. <u>Id.</u> at 338

(quoting Carducci, 714 F.2d at 174).  The actual holding of the case, however, hinged on the

court's analysis of the accuracy element of the claim.[1]  See id. at 337 ("The records, then, are

accurate: they correctly reflect the position to which Kleiman officially was assigned.").  And the

court explicitly noted that

> nothing we say today should be taken to cast doubt on Hubbard's statement that "the
> Privacy Act permits a federal job applicant to recover damages for an adverse
> personnel action actually caused by an inaccurate or incomplete record."
> Hubbard's holding was based on the "actually caused" language; ours is grounded in
> the reading of "accurate."

Id. at 339 n.5 (citation omitted).  Again, the Court of Appeals reached the merits of the Privacy

Act claim, but evaluated the plaintiff's claims with an eye to avoiding conflict with the CSRA.

Returning to defendant's argument, the Court agrees that plaintiff should not be allowed

to use the Privacy Act as an "end-run" around the CSRA.  Def.'s Mem. in Support of Mot. to

Dismiss/Mot. for Summ. J. ("Def.'s Mot.") at 10.  As noted above, the CSRA provides only

procedural protections to employees who receive a fourteen-day suspension, see 5 U.S.C. § 7503,

and those protections were undisputedly afforded to plaintiff.  The D.C. Circuit has stated that

"[t]his court has refused to allow the exhaustive remedial scheme of the CSRA to be

impermissibly frustrated by granting litigants, under the aegis of the Privacy Act or otherwise,

district court review of personnel decisions judicially unreviewable under the CSRA."  Kleiman,

956 F.2d at 338 (internal quotation marks and citation omitted).  The Circuit has been careful,

however, to disallow only those Privacy Act claims that plainly fall within this prohibition.

---

[1]The Kleiman opinion does not specify the subsection under which the plaintiff brought
his action, but it seems clear that he sought amendment pursuant to subsection (g)(1)(A).  See
956 F.2d at 336 (describing Kleiman's "action to compel the Department of Energy . . . to amend
its records"); id. at 338 (referencing de novo standard of review applicable to subsection
(g)(1)(A) claims).

Accordingly, this Court will follow the course set by the Court of Appeals -- it will proceed to evaluate the merits of plaintiff's claims, but will do so in a way that does not do violence to the CSRA. Although perhaps not the "cleanest" approach to CSRA "preemption" of Privacy Act challenges to personnel actions, it is the approach most consistent with D.C. Circuit law.[2]

## II.    Plaintiff's Amendment Claim

The Privacy Act provides for a civil action when an agency "makes a determination . . . not to amend an individual's record in accordance with his request, or fails to make such review in conformity with [§ 552a(d)(3)]." § 552a(g)(1)(A); see also § 552a(d)(3) (governing agency review of refusal to amend record). An individual seeking relief under subsection (g)(1)(A) must first exhaust administrative remedies by requesting agency review under subsection (d)(3). McCready v. Nicholson, 465 F.3d 1, 14 (D.C. Cir. 2006). A district court presented with an amendment claim "is not to assess the agency's review of the amendment request, but rather is to determine for itself whether the request should have been granted." White v. Office of Pers. Mgmt., 787 F.2d 660, 663 (D.C. Cir. 1986); see also § 552a(g)(2)(A) (specifying de novo review). If the district court finds the challenged record inaccurate, it "may order the agency to amend the individual's record in accordance with his request or in such other way as the court may direct." § 552a(g)(2)(A).

### A.    System of Records

Plaintiff is seeking to amend the following five records: (1) the ROI, (2) the March 16

---

[2]In contrast, the CSRA has been found to preclude any judicial consideration of non-constitutional claims based on agency personnel actions when those claims are brought pursuant to the Administrative Procedure Act -- claims that also were cognizable prior to the enactment of the CSRA. See Carducci, 714 F.2d at 172.

notice, (3) the March 29 notice, (4) the notice of decision, and (5) the Standard Form 50. As a threshold matter, only records that are maintained within a "system of records" are subject to amendment under subsection (g)(1)(A). See § 552a(d); Henke v. U.S. Dep't of Commerce, 83 F.3d 1453, 1459 (D.C. Cir. 1996) ("[T]he determination that a system of records exists triggers virtually all of the other substantive provisions of the Privacy Act, such as an individual's right . . . to request amendment of her records."). The Privacy Act defines "system of records" to mean "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." § 552a(a)(5). Defendant concedes that the March 16 and 29 notices, the notice of decision, and the Standard Form 50 are records maintained within a system of records. Mot. Hearing Tr. 3:5.

Defendant argues, however, that the ROI is not a record contained within a system of records for purposes of the Privacy Act. According to a declaration submitted in support of the Army's motion for summary judgment, ROIs generated pursuant to Army Regulation 15-6 are maintained in an automated case management system that assigns a log number to each report. Def.'s Mot. Ex. C (Decl. of Annette Fears) ¶¶ 2-3. The ROIs are "not retrieved by name, Social Security number, or any other personal identifier," but instead are retrieved by log number, "which is unrelated to specific individuals." Id. ¶ 3. Although plaintiff, in his statement of material facts in dispute, asserts that the ROI is a record maintained within a system of records, see Pl.'s Statement of Material Facts in Dispute ¶ 1, that "fact" is a legal conclusion. The only support plaintiff provides for his assertion is the surmise that the Army has the capability to retrieve an ROI by a personal identifier. Pl.'s Opp'n at 15.

-14-

But even assuming this is true, the law is clear that "retrieval capability is not sufficient to create a system of records; the agency must in practice retrieve information by personal identifier." McCready, 465 F.3d at 17 (internal quotation marks omitted).  Given the statutory language "is retrieved," the "agency's actual retrieval practice and policies" are what matter, Henke, 83 F.3d at 1460-61, and here they are not in dispute.  Plaintiff has not challenged the Army's description of its actual ROI maintenance and retrieval techniques.  Nor has he pointed to any evidence in the record suggesting that the Army actually retrieves these reports by personal identifier, or even that it did so in response to his own Privacy Act amendment request (to which plaintiff had appended the ROI as an exhibit, see AR 733).  Because the Army's declaration is completely uncontroverted, the Court sees no reason to allow discovery on this matter.  The Army's motion for summary judgment is therefore granted with respect to plaintiff's subsection (g)(1)(A) request to amend the ROI.

**B.    Accuracy of Records**

As to the four remaining records, the Army argues that they are not the proper subject of an amendment claim because they reflect the judgments of Army officials rather than facts.  In defendant's view, the documents memorialize BG Kelley's judgment that two findings of misconduct were supported by a preponderance of the evidence, as well as his decisions to propose plaintiff's termination and ultimately to suspend him for fourteen days.  Def.'s Mot. at 8.  They also restate the investigating officer's determination that plaintiff committed misconduct -- also a judgment, according to the Army.  Id.  Plaintiff counters that the Army is conflating "factual finding" with "exercise of judgment" in a way that would render all findings of fact exempt from the amendment procedures of the Privacy Act.  Pl.'s Opp'n at 17.

-15-

The emphasis defendant has placed on the observation in McCready that, "generally speaking, the Privacy Act allows for correction of facts but not correction of opinions or judgments," 465 F.3d at 19, has led it to engage in semantics.  It is difficult to see how BG Kelley's "findings" that plaintiff falsified his resume and misused government property are any different from an Inspector General's findings that an employee did not work on a particular day, see id., or an agency investigator's "final judgment" that an employee improperly passed classified information to foreign officials, see Strang v. U.S. Arms Control & Disarmament Agency, 864 F.2d 859, 866 (D.C. Cir. 1989).  All three findings required the weighing of conflicting evidence.  The latter two findings have nonetheless been considered proper subjects for district court review under the Privacy Act.  See McCready, 465 F.3d at 19 (remanding subsection (g)(1)(C) claim for development of record with respect to accuracy of "fact"); Strang, 864 F.2d at 866 (remanding subsection (g)(1)(A) claim for district court to "review the evidence de novo to ensure that the agency's judgment is sufficiently accurate to ensure fairness").  The Army's definition of "judgment" is thus overbroad; it would encompass, and hence insulate from Privacy Act review, all but the most patent facts.

The Court does agree, however, that the true aim of plaintiff's amendment claim is to obtain judicial review of a personnel decision.  Taking his amendment requests one by one, it becomes clear that plaintiff is not challenging the accuracy of his records so much as asking this Court to rewrite his employment history.[3]  With respect to the March 16 notice and March 29

---

[3]The Court finds it unnecessary to address plaintiff's first and last amendment requests. The first targets the ROI, which is not a record within a system of records for the reasons explained above.  The last is a catch-all that references "any and all other documents associated with or generated by the AR 15-6 investigation."  Compl. ¶ 47.  The Court has not been alerted to the existence of any records meeting this description; hence, there is nothing to amend.

notice, documents that reflect BG Kelley's proposal to terminate plaintiff's employment, plaintiff asks that they "be amended to show that such action was not taken." Compl. ¶ 47. As explained above, these documents provided notice of <u>proposed</u> adverse actions; nowhere do they state that such action was in fact taken. There is simply nothing inaccurate about them. Even more strikingly, plaintiff requests that the "notice of suspension of employment be amended to show that such action was not taken." <u>Id.</u> Yet, plaintiff was suspended. <u>Id.</u> ¶ 39. Similarly, plaintiff asks that "the Standard Form 50 reflecting his 14-day suspension of employment and the reasons therefore be amended to show that such action did not occur." <u>Id.</u> ¶ 47. But, it did occur. Hence, his requested "corrections" would actually introduce inaccuracies in these two documents by changing history.

Plaintiff, in short, is not seeking to correct any true errors in his records. Instead, he is hoping that this Court will expunge all references in his records to an adverse personnel action that he could not challenge directly because the CSRA precludes such review. That is exactly the type of "collateral attack on the original personnel decision" that the Court of Appeals considers impermissible. <u>Kleiman</u>, 956 F.2d at 338. Although plaintiff argues that even opinions or judgments are susceptible to Privacy Act review if they are based entirely on allegedly inaccurate facts, <u>see</u> Pl.'s Opp'n at 20-22 (citing <u>Mueller v. England</u>, 404 F. Supp. 2d 51, 54 (D.D.C. 2005) ("Under the Privacy Act, the Court must review the record to 'eliminate . . . inaccurate opinions based solely upon such erroneous facts . . . .'"); <u>accord</u> <u>Ertell v. Dep't of Army</u>, 626 F. Supp. 903, 908, 911 (C.D. Ill. 1986); <u>see also</u> <u>R.R. v. Dep't of Army</u>, 482 F. Supp. 770, 775 (D.D.C. 1980) (finding that psychiatric diagnoses based in part on erroneous facts "are not so thoroughly discredited as to justify their deletion")), plaintiff has framed his amendment requests only as

-17-

attacks on the statements indicating that judgments were made, and not on the facts underlying those judgments.[4]  The Court therefore finds that the challenged portions of plaintiff's records are accurate.  See Kleiman, 956 F.2d at 337 (finding records accurate because "they correctly reflect the position to which Kleiman officially was assigned"); Levant v. Roche, 384 F. Supp. 2d 262, 270 (D.D.C. 2005) (same); cf. Enigwe v. Bureau of Prisons, No. 06-cv-457, 2006 WL 3791379, at *2 (D.D.C. Dec. 22, 2006).  Accordingly, the motion to dismiss the remainder of plaintiff's amendment claims is granted.

## III.    Adverse Determination

The Privacy Act also provides for a civil action when an agency

fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual.

§ 552a(g)(1)(C).  A plaintiff prevails on a subsection (g)(1)(C) claim by showing that "(1) he has been aggrieved by an adverse determination; (2) the [agency] failed to maintain his records with the degree of accuracy necessary to assure fairness in the determination; [and] (3) the [agency's] reliance on the inaccurate records was the proximate cause of the adverse determination."  Deters

---

[4]Even assuming that plaintiff has correctly stated the law, and that his amendment request sufficiently raises a challenge to the "facts" underlying BG Kelley's judgment, he still has not demonstrated that BG Kelley relied exclusively on those allegedly inaccurate facts when making the challenged personnel decisions.  See infra Part III; see also R.R. v. Dep't of Army, 482 F. Supp. at 775 (rejecting amendment claim because plaintiff could not demonstrate that psychiatrist "rel[ied] exclusively on the discredited social history when diagnosing plaintiff's condition"); id. (denying claim seeking damages for benefits decision predicated on allegedly faulty psychiatric diagnoses for lack of causation and noting that plaintiff sought "to circumvent the statutory provisions making the VA's determinations of benefits final and not subject to judicial review").

v. U.S. Parole Comm'n, 85 F.3d 655, 657 (D.C. Cir. 1996); accord McCready, 465 F.3d at 10.

Additionally, if "the court determines that the agency acted in a manner which was intentional or

willful," it can award the plaintiff actual or statutory damages, costs, and attorney fees.

§ 552a(g)(4).[5]  "[D]e novo review is not called for[; r]ather, the reviewing court is to inquire

whether the standard articulated in § 552a(g)(1)(C) has been met." White, 787 F.2d at 663.

Again, this Court is also cognizant of the "need to read the Privacy Act without doing violence to

the Civil Service Reform Act of 1978." Kleiman, 956 F.2d at 338.

Plaintiff has asserted a subsection (g)(1)(C) claim based on statements in the ROI[6] and

other documents that he falsified his resume and misused government property.  The only

"adverse determination" at issue in this case is plaintiff's fourteen-day suspension.  See Compl.

¶ 39.  Although the complaint references an April 28, 2006, proposal to remove plaintiff from

federal service, see id. ¶ 50, plaintiff does not allege that a termination actually occurred.  The

mere issuance of a notice of proposed termination does not constitute an "adverse determination"

under the Privacy Act.  See OPM Guidelines, 40 Fed. Reg. at 28,969 ("An adverse action is one

resulting in the denial of a right, benefit, entitlement, or employment by an agency which the

individual could reasonably have been expected to have been given if the record had not been

deficient."); see also Deters, 85 F.3d at 659 (questioning, without deciding, whether preliminary

---

[5]The Supreme Court has suggested that equitable relief may also be available for "victims of adverse determinations" and, if so, that the Act is silent about the standards of proof governing such relief.  Chao, 540 U.S. at 619 n.1.  Thus, the D.C. Circuit has indicated that a finding of intent or willfulness is not a necessary element for all subsection (g)(1)(C) claims.  See McCready, 465 F.3d at 10 & n.5.

[6] In light of McCready, the Army now acknowledges that the "system of records" requirement does not apply to subsection (g)(1)(C) claims.  See McCready, 465 F.3d at 12.

assessment worksheet created for parole board can "really be deemed an 'adverse determination,' i.e., one affecting the inmate's rights, benefits, entitlements, or opportunities" given that it did "not appear to be in any way binding on the hearing panel, which makes the parole determination").  Plaintiff also alleges generally that the Army's refusal to amend his records has adversely affected his "prospects for future employment, whether governmental or non-governmental," Compl. ¶ 54, but he has not alleged any corresponding concrete, adverse determinations, as he must to state an adverse-determination claim.  See McCready, 465 F.3d at 12 ("[T]he text of the statute conditions relief upon a concrete, adverse determination.").

In order to prevail on his adverse-determination claim, then, plaintiff must demonstrate that the Army's reliance on the allegedly inaccurate records proximately caused his suspension. See McCready, 465 F.3d at 10.  As noted above, district courts must "carefully analyze the asserted causation link" to assure that the Privacy Act is not being used to circumvent the CSRA's limits on judicial review of personnel actions.  Hubbard, 809 F.2d at 5.  A guiding principle in this analysis is that a document memorializing an adverse personnel decision does not constitute the proximate cause of that personnel decision for purposes of an adverse-determination claim.  For example, the Court of Appeals in Hubbard held that a passover document stating (allegedly falsely) that Hubbard's job application was rejected for lack of experience did not cause his failure to obtain employment but "merely memorialized that decision."  Id. at 5-6.  In a similar case cited by the Army, the plaintiff brought Privacy Act claims against the Army and Air Force Exchange Service for damages arising from his discharge, which he contended was caused by allegedly inaccurate documents created during a misconduct investigation.  See Castella v. Long, 701 F. Supp. 578, 584  (N.D. Tex. 1988).  The district court

dismissed the claims, however, finding that "the cause of Plaintiff's discharge was the agency's determination that he did commit the fraud; the documents in question merely memorialize this determination."  Id. at 584 n.3.

Here, just as in Hubbard and Castella, the "bad fit between the facts asserted by [plaintiff] and a colorable Privacy Act claim is revealed by [his] failure to demonstrate the required causal link."  Hubbard, 809 F.2d at 5.  The document best revealing this failure is the notice of decision in which BG Kelley informed plaintiff of his imminent suspension.  See Compl. ¶¶ 37, 38; AR 595-596.  The notice states, in pertinent part:

> Based on my review of the facts and circumstances in this case, I have determined that the charges of 1) falsification of information in your job application, and 2) misuse of Government resources are supported by a preponderance of the evidence. . . . However, I have determined that your actions do not warrant removal.  Therefore, I am reducing the penalty . . . to a 14-day suspension.

AR 595.  The nature of this document is self-evident.  The notice did not cause the suspension, but instead memorialized BG Kelley's decision to suspend plaintiff.  For the same reason, the Standard Form 50 documenting the suspension did not cause BG Kelley's decision to suspend plaintiff -- not to mention that the Form was approved on May 5, 2004, after the decision was made.  AR 597.  It would also be incorrect to say that the March 16 notice and the March 29 notice caused plaintiff's suspension.  Those documents, which put plaintiff on notice of his possible termination, see Compl. ¶¶ 30, 31; AR 532-34, memorialized BG Kelley's preliminary decisions and otherwise documented the progress of the unfolding personnel action.  But they had no independent effect of their own and were in all respects superseded by the final notice of decision.

That leaves the ROI.  Plaintiff's challenge to the ROI is very specific: he alleges that two

of the thirteen findings documented in the ROI are incorrect. Plaintiff has never objected to the evidence underlying those findings as it was summarized in the ROI's twenty-five page Listing of Issues.[7]  See AR 6-30. And it is undisputed that before issuing the suspension decision, BG Kelley independently evaluated the "facts and circumstances" of plaintiff's investigation. AR 595; Mot. Hearing Tr. 20:6-7. At the very least, BG Kelley "thoroughly reviewed" the ROI and "considered" plaintiff's eight-page reply and its fifteen exhibits. AR 595. He then concluded that the charges against plaintiff were supported by the "preponderance of the evidence" and warranted a fourteen-day suspension. AR 595; Compl. ¶ 37.

On this point, too, Hubbard is instructive. The plaintiff in Hubbard argued that the passover document was a cause of OPM's decision to deny his appeal of the adverse hiring decision. 809 F.2d at 6. The court noted, however, that it was "undisputed that OPM based its resolution of the appeal on an independent investigation of [the agency's] hiring decision," and therefore the plaintiff had not "set forth facts showing that OPM relied . . . upon inaccuracies in the passover document in rejecting his appeal." Id. Similarly, it is beyond peradventure in this case that BG Kelley independently reviewed the claims of misconduct and came to his own conclusion. This Court therefore finds that plaintiff has not set forth specific facts showing a genuine issue for trial on the question whether the two contested statements in the ROI proximately caused his suspension. Plaintiff's claims under subsection (g)(1)(C) must therefore

---

[7]Nor has plaintiff challenged the underlying evidence as presented in its raw form in exhibits and enclosures to the ROI. See AR 31-525. The record is silent, however, as to whether BG Kelley also reviewed those exhibits and enclosures before suspending plaintiff. See March 16 notice [AR 533] & March 29 notice [AR 535] (referencing BG Kelley's review of "AR 15-6 Investigation Report"). And, as plaintiff is the non-moving party, the Court must infer that BG Kelley did not.

fail.

Given this finding that the allegedly inaccurate records did not cause the adverse

determination, the Court does not need to decide the correctness of defendant's alternative

argument that it "may prevail in an accuracy challenge by showing that it took 'reasonable steps

to verify [the] accuracy'" of the records.  See Def.'s Reply in Support of Mot. to Dismiss/Mot. for

Summ. J. at 9.  It is worth noting, however, that the law on this point is not as clear as

defendant's minimal briefing suggests.  The D.C. Circuit in several cases has suggested that

taking reasonable steps to maintain accuracy satisfies an agency's obligations under the Privacy

Act.  See, e.g., McCready, 465 F.3d at 19 ("[W]e fail to see how McCready's presence at a

meeting is not a 'fact' capable of verification and why the VA need not correct that fact or show

that it took reasonable steps to verify its accuracy." (emphasis added)); Sellers v. Bureau of

Prisons, 959 F.2d 307, 312 (D.C. Cir. 1992) (noting in dicta that agency "perhaps . . . met the

requirements of the Act" when it relied on prison disciplinary committee reports, which stated

that plaintiff had been "given an opportunity to refute the [allegedly inaccurate] charges"); Doe v.

United States, 821 F.2d 694, 700 (D.C. Cir. 1987) (en banc) (holding, with respect to

"unknowable" facts, that "[t]he verification steps and checks undertaken by the Department, and

the corrections made based upon that review, . . . rendered the March 1981 ROI a record

maintained with the accuracy and completeness reasonably required to assure fairness to Doe").

Yet, this Circuit's adverse-determination framework also seems to require district courts to

consider, perhaps de novo, whether the challenged records are inaccurate.  See Toolasprashad v.

Bureau of Prisons, 286 F.3d 576, 583 (D.C. Cir. 2002) (stating that element of subsection

(g)(1)(C) claim is showing of "inaccurate records" and that "where truth can readily be

ascertained it is feasible, necessary, and proper, for the agency, and, in turn, the district court" to determine the accuracy of records (internal quotation marks omitted)); <u>accord Deters</u>, 85 F.3d at 658; <u>Doe</u>, 821 F.2d at 699.[8]

It may be that "accuracy" in this context is equivalent to, or satisfied by, the taking of reasonable steps.  <u>See</u> § 552a(g)(1)(C) (requiring "such accuracy . . . as is necessary to assure fairness in any determination"); <u>Doe</u>, 821 F.2d at 698 n.10 ("[T]he necessity 'to assure fairness in any determination' . . . calls for a balanced judgment, one inherently involving a reasonableness criterion.").  Or it may be that a plaintiff seeking equitable relief under subsection (g)(1)(C) must show that an agency failed to take reasonable steps to assure the accuracy of a document, even if that document was inaccurate and actually caused an adverse determination.  <u>See Chao</u>, 540 U.S. at 619 n.1 (noting that Privacy Act is silent as to standards of proof governing such relief); <u>Edison v. Dep't of Army</u>, 672 F.2d 840, 843 (11th Cir. 1982) ("If the court determines that the agency has done what is reasonable in assuring the accuracy of the information, no more is required.").  Regardless, the parties' briefs on this issue, which detail the steps BG Kelley took in deciding whether the findings listed in the ROI were supported by a preponderance of the evidence, further underscore the independent nature of BG Kelley's decision, and thus

---

[8]In <u>Doe</u>, the case upon which <u>Toolasprashad</u> and <u>Deters</u> rely, the en banc majority declined to distinguish between an amendment claim and an adverse-determination claim.  <u>See</u> <u>Doe</u>, 821 F.2d at 697-98 (applying de novo standard of review from § 552a(g)(2)(A) to accuracy standard in § 552a(g)(1)(C)); <u>id.</u> at 697 n.8 (recognizing that plaintiff sought both expungement and damages but stating: "Nonetheless, whether the nature of the relief sought is injunctive or monetary, the standard against which the accuracy of the record is measured remains constant. That standard is found in . . . § 552a(e)(5) and reiterated in . . . § 552a(g)(1)(C)."). This posture makes it difficult to discern whether the de novo standard of review applicable to the accuracy element of amendment claims is also contemplated for a district court's assessment of the accuracy element of adverse-determination claims.  <u>See White</u>, 787 F.2d at 663 (specifying review under "standard articulated in § 552a(g)(1)(C)").

demonstrate the lack of a causal link between the ROI's statements and plaintiff's suspension.

In sum, plaintiff's subsection (g)(1)(C) claims fail. His inability to set forth facts demonstrating a causal link between the allegedly inaccurate records and the adverse personnel action once again reveals the true purpose of this suit: to obtain judicial review of an otherwise unreviewable fourteen-day suspension. Mindful of the D.C. Circuit's repeated admonition not to allow judicial consideration of Privacy Act claims to frustrate the comprehensive remedial scheme of the CSRA, plaintiff's adverse-determination claim must be rejected.

## <u>CONCLUSION</u>

For the reasons stated, the Court grants defendant's motion to dismiss or in the alternative for summary judgment. A separate order is issued herewith.

    /s/  John D. Bates       
**JOHN D. BATES**
**United States District Judge**

Dated:   <u>March 29, 2007</u>

-25-